OPINION
 

 Per Curiam:
 

 BACKGROUND
 

 Ricardo Lorenzo Crockett (Crockett) and Elester Thomas, Jr. (Thomas) were arrested on March 1, 1993, in Las Vegas, Nevada, and charged with trafficking in a controlled substance. Respondents allegedly possessed 238.5 grams of cocaine. On March 23, 1993, respondents appeared in the justice court and a preliminary hearing was set for May 12, 1993. On May 10, 1993,
 
 *840
 
 several days before the scheduled hearing, Thomas, unopposed by Crockett or the State, moved the justice court for a continuance of the preliminary hearing. The justice court granted that motion and a new preliminary hearing, for both Thomas and Crockett, was set for June 14, 1993.
 

 Several weeks prior to June 14, 1993, counsel for Crockett negotiated a plea bargain with the State. Under this arrangement, Crockett agreed to plead guilty to two charges: conspiracy to possess a controlled substance and battery with substantial harm. Contemporaneous with these negotiations, the State offered to allow Thomas to plead guilty to a charge of small trafficking in a controlled substance.
 

 Sometime prior to the preliminary hearing, the State notified respondents that it was withdrawing its offer to allow them to plead to the substantially reduced charges. This action was precipitated by discussions which the State had with the United States Attorney’s Office wherein the State was informed that respondents were suspected of being major drug kingpins who distributed multiple kilograms of cocaine per week in the Las Vegas area.
 
 [1]
 
 Concerned with the threat and danger respondents posed to the community, and the need to maximize their incarceration, the State withdrew its offer to allow respondents to plead to reduced charges.
 

 Shortly thereafter, respondents’ counsels moved the justice court for specific performance of their plea bargain negotiations. Respondents contended that it was unfair for the State to be able to withdraw a plea bargain when it had already been verbally accepted. Further, respondents’ counsels contended that “their clients suffered a loss of confidence in their attorney’s ability to negotiate with the State.” After further argument, the justice court informed counsel that it would require briefs on the matter.
 

 Eventually, on August 5, 1993, the justice court ordered the State to go ahead with the negotiations offered and accepted by respondents. In so doing, the justice court said:
 

 The State has indicated verbally and in their written motions that since the deal was not put on the record in Court and accepted by the Court, as other case law has suggested, that there really is no deal, and stated they were withdrawing their negotiations because the defendant was not a victim as to the livelihood of the negotiations until such time.
 

 I guess what I have to decide is whether or not to rule on technicality or fairness.
 

 
 *841
 
 Unlike the civil system, the entire criminal system runs on the word of opposing counsel. The system requires complete integrity on behalf of the D.A. and all members of the criminal bar.
 

 If every deal needs to be memorized [sic] in writing and put on the record before a deal is a deal, then I think our system of criminal justice would come to a screeching halt, especially in light of the fact that 97 percent of all cases are negotiated.
 

 I think that a plea bargain is an essential component of the administration of the criminal justice system in America. I don’t see how I can rule, Mr. Langford, that until it is in Court on the record that any D.A. is allowed to withdraw a deal if they so choose.
 

 I feel the D.A. has the duty to avoid all mistakes and believe in the olfer at the time the offer is made.
 

 A few phone calls to the U.S. Attorney’s Office, the Feds, and the detectives at Metro would have and should have educated everyone regarding the level of the criminal activity involved in this case by the two defendants, or the alleged criminal activity.
 

 By attempting to back out now after you have received more information, and I understand why you’re doing it, this information should have been known at the time you made the deal. It violates the spirit of the negotiations, and it misconstrues all of the negotiations in the criminal justice cases.
 

 I cannot personally condone this kind of behavior. It causes stress within the system, between all attorneys and their responses at the time of plea bargain. As far as I’m concerned, a deal is a deal, and once it’s made it should be honored.
 

 In response, the State informed the justice court that it intended to seek a grand jury indictment against both respondents and that the indictment would “mimic the criminal complaint already on file in Justice Court.”
 

 On the next day, Crockett and Thomas unconditionally waived their rights to a preliminary hearing. The following week, a grand jury indictment was returned against respondents charging them with trafficking in controlled substances. Concerned with being in violation of the justice court’s order to specifically perform the plea bargain, the State petitioned the district court for a writ of mandamus ordering the justice court to vacate its order. On September 8, 1993, the district court denied the State’s petition.
 

 
 *842
 

 LEGAL DISCUSSION
 

 Whether a• prosecutor can withdraw from a plea bargain offer when the Court has not yet accepted a defendant’s guilty plea
 

 In Mabry v. Johnson, 467 U.S. 505 (1984), the United States Supreme Court considered whether a defendant has a constitutional right to have a plea bargain offer enforced after it has been accepted by a defendant. Resolving that question negatively, a unanimous Court opined:
 

 A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. (Footnote omitted.) It is the ensuing guilty plea that implicates the Constitution.
 

 Id.
 
 at 507-08. However, once a defendant enters a guilty plea and the plea is accepted by the court, due process requires that the plea bargain be honored. Santobello v. New York, 404 U.S. 257 (1971).
 

 While plea agreements are a matter of criminal jurisprudence, most courts have held that they are also subject to contract principles.
 
 See, e.g.,
 
 United States v. Kingsley, 851 F.2d 16, 21 (1st Cir. 1988) (using contractual analysis to enforce plea agreement and award “benefit of the bargain”); United States v. Read, 778 F.2d 1437, 1441 (9th Cir. 1985) (“a plea bargain is contractual in nature and is measured by contract-law standards”),
 
 cert. denied,
 
 479 U.S. 835 (1986); United States v. Baldacchino, 762 F.2d 170, 179 (1st Cir. 1985) (“plea bargains are subject to contract law principles insofar as their application will insure the defendant what is reasonably due him”); United States v. Fields, 766 F.2d 1161, 1168 (7th Cir. 1985) (“A plea bargain is a contract.”).
 

 Applying these general contract principles, the First Circuit Court of Appeals held that a plea agreement is nothing more than an offer until it is approved by the court:
 

 pursuant to general contract principles (citations omitted) we hold that a plea agreement of this type
 
 [2]
 
 is no more than an offer by the government: if the defendant pleads guilty and if that plea is accepted by the court, then the government will perform as stipulated in the agreement. Until performance took place by [defendant], the government was free to withdraw its offer.
 

 
 *843
 
 United States v. Papaleo, 853 F.2d 16, 20 (1st Cir. 1988) (footnote added).
 

 Similarly, other federal and state courts have dealt with the issue at bar and have generally concluded that neither a defendant nor the government is bound by a plea offer until it is approved by the court.
 
 See, e.g.,
 
 United States v. Savage, 978 F.2d 1136, 1138 (9th Cir. 1992),
 
 cert. denied,
 
 .U.S., 113 S. Ct. 1613 (1993). In adopting this view, the Ninth Circuit Court agreed with the Fifth Circuit’s reasoning that:
 

 “the realization of whatever expectations the prosecutor and defendant have as a result of their bargain depends entirely upon the approval of the trial court. Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially on the bargain until the trial court approves the plea. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party would be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court.”
 

 Id.
 
 at 1138 (quoting United States v. Ocanas, 628 F.2d 353, 358 (5th Cir. 1980)),
 
 cert. denied,
 
 451 U.S. 984 (1981);
 
 accord
 
 United States v. Walker, 927 F.2d 389, 390 (8th Cir. 1991); United States v. Molina-Iguado, 894 F.2d 1452 (5th Cir.),
 
 cert. denied,
 
 498 U.S. 831 (1990); United States v. McGovern, 822 F.2d 739, 744 (8th Cir.),
 
 cert. denied,
 
 484 U.S. 956 (1987).
 

 The general rule, however, is subject to a detrimental reliance exception. Even if the agreement has not been finalized by the court, “‘[a] defendant’s detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding.’”
 
 Savage,
 
 978 F.2d at 1138 (quoting McKenzie v. Risley, 801 F.2d 1519, 1527 (9th Cir. 1986)),
 
 vacated in part on other grounds,
 
 842 F.2d 1525 (9th Cir.),
 
 cert. denied,
 
 488 U.S. 901 (1988);
 
 cf.
 
 United States v. Aguilera, 654 F.2d 352 (5th Cir. 1981) (defendant’s failure to rely on the plea bargain offer was cited as a reason for allowing the prosecution to withdraw it). For example, if a defendant supplied the prosecution with information or another benefit based on the negotiated plea bargain, then the prosecution would be bound to honor the agreement.
 
 Savage,
 
 978 F.2d at 1138.
 

 State courts have reached similar results.
 
 See, e.g.,
 
 State v. Superior Court of County of Pima, 770 P.2d 375 (Ariz. Ct. App. 1988) (prosecutor is entitled to withdraw from plea bargain if
 
 *844
 
 defendant suffers no detriment); Petty v. State, 532 N.E.2d 610 (Ind. 1989) (prosecutor had authority to withdraw plea bargain agreement where it had not been reduced to writing and submitted to the trial court and where defendant’s contention that he relied on plea bargain to his detriment, was not supported by the record); State v. O’Leary, 517 A.2d 1174 (N.H. 1986) (prosecution could withdraw from plea agreement where defendant had not yet pleaded guilty or had not taken any steps which prejudiced his right to a fair trial); Metheny v. State, 589 S.W.2d 943 (Tenn. Crim. App. 1979),
 
 cert. denied,
 
 445 U.S. 967 (1980) (prosecutor could withdraw from plea bargain offer where there was no showing of irremedial prejudice to defendant);
 
 see also
 
 State v. Bogart, 788 P.2d 14 (Wash. Ct. App. 1990) (the prosecution could withdraw a plea proposal after learning additional facts implicating defendant, where defendant had not yet entered guilty plea, and had failed to establish that he detrimentally relied on bargain in such a way that a fair trial was no longer possible).
 

 Conversely, some states refuse to permit a prosecutor to withdraw from a plea bargain offer after a defendant has agreed to accept the offer. Ex parte Yarber, 437 So. 2d 1330 (Ala. 1983) (defendant may compel enforcement of a plea bargain agreement, broken by the state, where defendant had not yet pleaded guilty or otherwise relied on agreement to his disadvantage); Burns v. State, 455 So. 2d 113 (Ala. Crim. App. 1984) (plea bargain agreement could not be repudiated by the prosecution with impunity); State v. Brockman, 357 A.2d 376 (Md. 1976) (prosecution could not withdraw from plea bargain offer simply because it no longer needed defendant’s testimony against co-defendant).
 

 Respondents contend that the State’s endeavor to dishonor its plea bargain agreement with respondent is outrageous and fundamentally unfair. Further, they contend, the only way to effectively promote the viability of plea bargaining, as an institution, is to mandate the enforcement of their plea agreement. Specific, performance of plea agreements, they contend, is necessary to preserve the integrity of the judicial system and to insure that defendant’s contract and due process rights are protected.
 

 In support of these propositions respondents cite to Citti v. State, 107 Nev. 89, 807 P.2d 724 (1991), where this court said:
 

 When the State enters a plea agreement, it “is held to ‘the most meticulous standards of both promise and performance.’ . . . The violation of the terms or ‘the spirit’ of the plea bargain requires reversal.”
 

 Id.
 
 at 91, 807 P.2d at 726 (quoting Van Buskirk v. State, 102 Nev. 241, 243, 720 P.2d 1215, 1216 (1986)). In both
 
 Citti
 
 and
 
 Van
 
 
 *845
 

 Buskirk
 
 the defendants were induced to plead guilty by the prosecution’s plea bargain olfer; thereafter the prosecution refused to honor its bargain. Consequently, this court held that the proper remedy for breach of a plea agreement is specific performance.
 
 Citti,
 
 107 Nev. at 94, 807 P.2d at 727;
 
 Van Buskirk,
 
 102 Nev. at 243, 720 P.2d at 1216.
 

 However, the factual circumstances involved in the cited authorities are clearly distinguishable from the case at bar, where respondents have not yet pleaded guilty or otherwise prejudiced their position by relying upon the prosecution’s offer during the period it was in existence. Further, there has been no showing that the State gained some unfair advantage over respondents as a result of their reliance on the plea bargain offer. In short, respondents are in the same position as they were after the initial charges were filed — they are free to exercise their right to a trial.
 

 Moreover, respondents’ claims of fundamental unfairness are unpersuasive. In the instant case, the prosecutor uncovered additional information, from federal authorities, which changed the complexion of respondents’ culpability for the crimes. Consequently, the prosecutor withdrew the plea bargain offer, which he considered was too lenient for the crimes allegedly committed by respondents. Arguably, it would be fundamentally unfair to the public, considering the threat drugs pose to a community, to allow suspected drug kingpins to plead to substantially reduced charges.
 

 CONCLUSION
 

 The greater weight of authority supports the State’s contention that a prosecutor can withdraw a plea bargain offer anytime before a defendant pleads guilty, so long as the defendant has not detrimentally relied on the offer. Inasmuch as the instant plea bargain is executory — neither party has performed and they have not demonstrated detrimental reliance on the plea bargain offer— we conclude that the justice court erred in compelling the State to specifically perform its plea bargain offer. Accordingly, the district court’s decision denying the State’s petition for a writ of mandamus is reversed and this case is remanded to the district court for action consistent with this opinion.
 
 [3]
 

 [1]
 

 Federal agents had conducted a wiretap investigation of respondents which ultimately resulted in federal drug charges being lodged against them.
 

 [2]
 

 Papaleo had agreed to plead guilty to one count of the indictment in exchange for the dismissal of two other counts.
 
 Papaleo,
 
 853 F.2d at 19.
 

 [3]
 

 The Honorable Miriam Shearing, Justice, voluntarily recused herself from participation in the decision of this appeal.