*876 OPINION
By the Court,
Guy, D. J.:
On May 20, 1994, the court heard oral argument on a number of motions filed by both parties. Today, we address Petitioner Whitehead’s “motion to preclude further illegal involvement in [this] case by attorney general and associates in order to promote the administration of justice and guarantee due process of law in this and related proceedings” and Petitioner Whitehead’s “motion for order to show cause, an investigation, and a protect *877 ive order,” and “motion for appointment of a master to conduct factual investigation.”
We are compelled to conclude that Petitioner’s motions are meritorious. We accordingly order that Attorney General Frankie Sue Del Papa, Assistant Attorney General Brooke Nielsen and Special Deputy Attorney General Donald J. Campbell be removed as counsel for the Nevada Commission on Judicial Discipline (“Commission”) in these writ proceedings and in all disciplinary proceedings now pending against Petitioner Whitehead before the Commission.[1] For reasons hereinafter specified, the Office of the Attorney General is precluded from acting as legal advisor or prosecutor in the present matter or in any matter relating to the constitutional duties of the Commission to hear and decide judicial discipline complaints.
In granting Petitioner Whitehead’s motion for the appointment of a master to conduct a factual investigation, we grant the motion in part by adjudicating the clear need for the appointment of a special master, but we defer our decision as to the scope of the investigation and the identity of the investigator for resolution in the near future.[2]

*878
REMOVAL OF THE ATTORNEY GENERAL, THE ASSISTANT ATTORNEY GENERAL AND SPECIAL DEPUTY ATTORNEY GENERAL CAMPBELL AS COUNSEL FOR THE COMMISSION

Petitioner Whitehead urges three grounds for requiring the Attorney General’s removal as legal counsel and prosecutor for the Commission. Thq first ground is that the Attorney General, as an elected, Constitutional officer of the Executive Department of Nevada’s government, is not permitted by the separation of powers clause of our State Constitution to represent the Commission in the exercise of its disciplinary functions or to exercise powers relating to judicial discipline proceedings that are constitutionally vested in the Discipline Commission. The second ground is that, generally, and under the specific facts of this case, the Attorney General has a number of disqualifying conflicts in representing the Commission. These conflicts include the conflicts relating to giving the Attorney General access to confidential documents and proceedings of the Commission, the conflict arising out of the fact that the Attorney General is official counsel for the judges and justices of the state, and, most importantly, the conflict arising out of the Attorney General’s acting as legal advisor to the Commission (which is Petitioner Whitehead’s judge and jury) and at the same time prosecuting Whitehead before the tribunal to which the Attorney General has been giving legal advice and counsel. Of equal concern and importance is the problem and potential problem of the Attorney General, and district attorneys over whom the Attorney General has the power of supervision,[3] prosecuting criminal and civil cases before judges who are under investigation and prosecution by the Attorney General in Commission proceedings, and the potential for holding such judges actual or imagined “hostages” without any awareness by opposing counsel. As to the third ground which Petitioner Whitehead asserts for seeking the removal of the Attorney General as the Commission’s lawyer and prosecutor, we conclude that the Attorney General must be removed as counsel and prosecutor for the Commission in this case. Our conclusion is based on the stated constitutional grounds and on the mentioned conflict of interest created by the Attorney General’s office, particularly, the Attorney General’s acting as both legal advisor to the Commission and as the prosecutor who has been *879 prosecuting Petitioner Whitehead before the Commission. It is unnecessary to reach the claim relating to the Attorney General’s misconduct in arriving at our decision on this motion.
First Ground: Constitutional Disqualification[4]
Article 3, section 1 of the Nevada Constitution provides as follows:
The powers of the Government of the State of Nevada shall be divided into three separate departments, — the Legislative, — the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases herein expressly directed or permitted.
This court has consistently affirmed that “[t]he division of powers is probably the most important single principle of government declaring and guaranteeing the liberties of the people.” Galloway v. Truesdell, 83 Nev. 13, 18, 422 P.2d 237, 241 (1967). This principle is also of Federal Constitutional dimension and has occupied a position of unquestioned importance since the early days of the Republic. As James Madison noted in The Federalist No. 47, “‘[w]ere the power of judging joined ... to the executive power, the judge might behave with all the violence of the oppressor’ ” (quoting Montesquieu). Merging the adjudicative power of the Commission with the executive power, as evidenced in the case before us raises this very specter.
Article 6 (the Judicial Article), section 21 of the Nevada Constitution creates the Commission on Judicial Discipline. The Commission is a part of the judicial branch of government, vested with the constitutional power to “censure, retire or remove” a *880 judge or justice, subject to such rules as this court might promulgate, and subject to appellate review by this court. Nev. Const, art. 6, § 21(1). The Attorney General, on the other hand, is “a constitutional officer in the executive branch of government” whose various duties are established by the legislature. See Ryan v. District Court, 88 Nev. 638, 642, 503 P.2d 842, 844 (1972); see generally Nev. Const, art. 5, § 19. In matters of judicial discipline, it is the Commission, not the Attorney General, which the constitution vests with the power and duty to deal with all matters relating to erring judges who are charged with violating the Code of Judicial Conduct. The Commission is constitutionally empowered to “designate for each hearing an attorney or attorneys at law to act as counsel to conduct the proceeding,” (id. at art. 6, § 21(9)(a)). Nowhere in the constitution is the Commission required or empowered to employ the Attorney General, a member of a separate and co-equal branch of government, to act as its counsel.[5] It is not constitutionally permissible for the Attorney General to investigate or prosecute a judge or justice on behalf of the Commission. The Attorney General may not represent the Commission in judicial discipline matters, nor may the Attorney General “prosecute” a judge or justice before the Commission, because “one department cannot exercise the power of the other two” without violating article 3, section 1 of the Nevada Constitution. Galloway, 83 Nev. at 19, 422 P.2d at 242.[6]
*881 Although the Commission disputes that the Attorney General’s office engaged in exercising any Commission functions, the record clearly reflects that Special Deputy Attorney General Don Campbell engaged in a very extensive investigation of the allegations against Petitioner on behalf of the Commission. Mr. Campbell’s affidavit also indicates that he was involved in carrying out the Commission function of screening complaints and that in doing so made the determination that many of the incidents alleged in one of the complaints against Petitioner did not warrant further action by the Commission. Whether Special Deputy Attorney General Campbell was acting for the Commission in making these Commission decisions or was merely advising the Commission to take these actions, the executive branch, through the Attorney General’s office, has been actively engaged in the judicial discipline process — a process that can be carried out properly and constitutionally only by the Commission on Judicial Discipline itself. Nev. Const, art. 6, § 21(7).
The State of Minnesota has recognized that it is not proper for the Attorney General to act as the Attorney General has acted in this case. See Rules of Board on Judicial Standards, Minn. Rules of Court, Rule l(d)(10) at 693 (West Supp. 1994) (Authorizing the Executive Secretary of the Board on Judicial Standards to “[e]mploy, with the approval of the board, special counsel, private investigators, or other experts as necessary to investigate and process matters before the board or the Supreme Court. The use of the attorney general’s staff for this purpose shall not be allowed.”) (Emphasis added.) The source of and basis for the Minnesota rule is the ABA’s Standards Relating to Judicial Discipline and Disability Retirement. See Judicial Conduct Organizations Governing Provisions (Kathleen Sampson, ed., 1984). Standard 2.8 states that the use of members of “the attorney general’s staff” to perform commission functions “is not recommended. . . . Their use may also interfere with the independence of the judiciary.” Id. at 15; see infra note 5 (emphasis added).
We are, of course, well aware of NRS 1.450(2) which commands the Attorney General to act as counsel “upon request” of the Commission. If the Commission or its members were to be sued for, say, some alleged tortious activity, there would be no bar to the Attorney General’s defending such a lawsuit, as long as *882 it did not involve the Commission’s constitutional mandate to hear and decide misconduct complaints against judges.[7]
If we were to read NRS 1.450(2) as permitting the Attorney General to represent the Commission in matters relating to specific cases of judicial discipline or, worse, as permitting the Commission’s legal advisor also to be the prosecutor of judicial discipline complaints, such a reading would run contrary to the constitution. State v. Douglass, 33 Nev. 82, 92, 110 P. 177, 180 (1910) (“the Legislature, in the absence of express constitutional authority, is as powerless to add to a constitutional office duties foreign to that office, as it is to take away duties that naturally belong to it”). The statute may properly permit the Commission to seek the legal advice of the Attorney General, much as another state entity might;[8] however, the statute cannot permit the invasion of the judicial department by the executive department of government. This would occur if the Attorney General were permitted to sit in from day to day in the Commission’s meetings, during which the principal Commission business is to deal with matters relating to judicial discipline. To allow this would be to allow the Attorney General to become almost an ex facto member of the Commission. It must be remembered that the Attorney General and her extensive staff must, in the performance of their constitutional duties, appear before the judges and justices of this state on a daily basis. If those same lawyers are privy to confidential and damaging information about judges, then, at the very least, the appearance of an impartial tribunal is lost. See conflict of interest section, infra, pp. 9-13; compare ARJD 2(9) (“Prosecuting officer means an attorney designated by the commission to file and prosecute the Formal Statement of Charges.”) (Emphasis added.)
We must necessarily disapprove of the practice of having a member of the Attorney General’s staff routinely participate in *883 Commission meetings and deliberations.[9] The policy rationale behind requiring the Commission to use independent counsel to perform both advisory and prosecutorial functions for the Commission in judicial discipline proceedings is obvious: it ensures that disciplinary proceedings are not pursued for personal, partisan, or political gain, and it ensures that one branch of government does not usurp the vital functions of another or place itself in the position of holding the others hostage.
Where a statute is susceptible to both a constitutional and an unconstitutional interpretation, this court is obliged to construe the statute so that it does not violate the constitution. Sheriff v. Wu, 101 Nev. 687, 708 P.2d 305 (1985). NRS 1.450(2) is constitutional insofar as it permits the Commission to request official legal opinions of the Attorney General in matters unrelated to judicial discipline. NRS 1.450(2) cannot be constitutionally read to authorize the Attorney General to act as counsel to the Commission or to act as prosecutor in judicial discipline proceedings.

Second Ground: The Attorney General’s Conflict of Interest

Amici (Ad Hoc Committee for the Preservation of an Independent Judiciary) argue that the involvement of the Attorney General in the disciplinary process creates hopeless conflicts of interest and roles and that such involvement creates an untoward and undesirable opportunity for undue influence upon the judiciary. We examine this argument carefully.
First we look at the potential for abuse inherent in any involvement by the Attorney General in the disciplinary process. As we held in Whitehead I, the Commission is part of the Judicial Department. See Whitehead v. Comm’n on Jud. Discipline, 110 Nev. 128, 159, 869 P.2d 795, 814 (1994). The rules this court has adopted pursuant to its constitutional mandate provide a clear requirement of confidentiality at least until after a probable cause hearing, a finding of probable cause, and the filing of a formal statement of charges. ARJD 5(1). It is not difficult to see the possibilities that exist if the Attorney General is allowed to participate in the Commission’s disciplinary activities. If the Attorney General has free access to the confidential information in possession of the Commission, the temptation is clearly *884 present for putting adverse, confidential information about a judge to improper and even political use. Anonymous “leaks” or threats of leaks could very well provide those with improper access to confidential information about judges considerable leverage over sitting judges, who, in our elective system, are always faced with the possibility of a contested election. Although we are not suggesting the existence of such implications in the present case, there is certainly a potential for an Attorney General who has adverse information relating to a judge to use this information to damage the career of any judicial officer that is seen as a political threat to the Attorney General or to his or her political allies or political agenda.
The Attorney General’s office, as now constituted, has close to one hundred attorneys who appear in many courts of this state. It is not difficult to see how the independence of judges might be compromised if a judge before whom a deputy attorney general was appearing felt threatened by the Attorney General’s possession of confidential information, whether true or not, that might be harmful to the judge if released to the public.
The threat just described is only one of the possible conflicts presented by allowing the Attorney General to participate in the judicial discipline process. Another conflict is presented by the fact that the Attorney General is the official legal representative of the judges and justices in this state and cannot, by the nature of that office engage in the prosecution of the very judges that the Attorney General represents as counsel.[10] It is not the foregoing conflicts, however, that give us the most pause. The most dangerous conflict lies in the Attorney General’s acting as both legal counsellor to the Commission and as prosecutor of judicial discipline complaints.
Special Deputy Attorney General Campbell has been acting in the role of investigator and prosecutor in this case. The Attorney General apparently sees nothing untoward or unusual about Special Deputy Attorney General Campbell’s acting in such capacities in this case, as the Attorney General freely tells us that her office has “investigated and processed literally dozens of [other] judicial misconduct complaints over the years.” Petition for Rehearing at 7. Such engagement by the Attorney General in the investigation and prosecution of judges is not only a violation of the separation of powers doctrine of our Constitution, it is a conflict of interest for the Attorney General to be prosecuting *885 before the Commission the very judges that she represents as counsel, and before whom she appears in the course of prosecuting criminal and civil cases. Again, of equally great concern is the conflict created by the Attorney General’s acting as either prosecutor or legal advisor to the judicial tribunal.
It cannot be denied that the Attorney General has been acting as legal advisor to the Commission while investigations and prosecutorial activities were being conducted by that office against Petitioner Whitehead. Ordinarily, a client’s regular consultation with his or her attorney, by the nature of the relationship, tends to instill feelings of trust and confidence and, frequently, friendship as between the client and the attorney. Most readers of this opinion should not have to be further convinced that it is simply not fair to require an accused judge or justice to appear before a tribunal where the judge’s prosecutor is also acting as legal counsel to the tribunal. In our adversarial system we have always been scrupulous about keeping adjudicative functions separate from the prosecutive function, and fairness requires that we continue to do so.
The proposed changes to the American Bar Association’s Model Rules for Judicial Disciplinary Enforcement deal quite extensively with this problem. The Report and Recommendation to the ABA House of Delegates strongly recommends “the separation of conflicting functions.” Thus “[a] commission member who participates in the investigation should not participate in the adjudicative process and vice versa.” Similarly, the proposed Model Rules also envision separate counsel for the Commission: One attorney (“disciplinary counsel”) would assist the Commission in performing its investigative and prosecutorial functions, another (“commission counsel”) would provide the Commission with “legal research, drafting, and advice.” The report observes that the roles of prosecutor and advisor are “inconsistent” and ought not be embodied in a single person, because such a separation of functions is “crucial to the perception of fairness.” The report also notes that “[a] system that relies on other government agencies to investigate complaints or present evidence, or both, loses efficiency and endangers confidentiality,” concluding that “ [disciplinary counsel should not use law enforcement officials or staff to investigate complaints or present cases .... Their use could compromise the confidentiality of investigations and could pose separation of powers problems.”[11]
*886 The conflicts envisioned by the ABA have manifested themselves all too clearly in the manner in which cases are currently being handled by the Commission. As noted in Whitehead II, the Attorney General and the Commission have had at least one judge under some kind of supervisory control or “probation,” which requires the judge to report to the Attorney General’s office under penalty of more severe disciplinary action in the event the “probation” fails. This supervision is going on while the Attorney General’s staff is presumably still trying cases before the supervised judge. 110 Nev. at 418-419, 873 P.2d at 969-971. This is a clear conflict of interest. Obviously, the Attorney General or the district attorneys over whom she has supervisory control, appear in an adversarial setting before the very judges she is investigating or is supervising under “probation.” Again, given the current rules of confidentiality surrounding judicial discipline matters prior to a finding of probable cause, it is inevitable that some members of the Attorney General’s and district attorneys’ staffs will appear before judges while in possession of damaging and confidential information about those judges. This may compromise the appearance of an impartial tribunal.[12]
The Commission has asserted that if this court does not allow the Attorney General to act as Commission counsel, the Commission will be unable to fulfill its constitutional function. This rather extravagant assertion may be rejected out-of-hand because the rules clearly contemplate that the Commission may employ independent counsel. ARJD 41; Nevada Const, art. 6, § 21(9)(a). We also reject the Commission’s argument that this this court will violate the Commission’s right to counsel of its choice and thereby deny the Commission due process of law if it determines *887 that the Attorney General may not act as she has in this proceeding. Even if we were to assume that a public body has some identifiable legal right to “counsel of its choice,” such a right would not include the Commission’s right to be represented by counsel with the clear conflict of interest problems that are discussed in this Opinion; and, certainly such a right could not be sufficient to overcome the separation of powers clause of the Nevada Constitution. See Kabase v. District Court, 96 Nev. 471, 611 P.2d 194 (1980).
The separation of powers clause of the Nevada Constitution prohibits the Attorney General from acting as prosecutor of judges injudicial discipline cases and from acting as the Commission’s counsel in disciplinary matters. We have, of course, already held that the Attorney General may issue official opinions to the Commission and that the Attorney General may “ supply [] the Commission with abstract advice on an occasional basis . . . .” Whitehead I, 110 Nev. at 133 n.5, 869 P.2d at 798 n.5. However, this certainly does not mean that the Attorney General can advise the Commission in matters relating to judicial discipline nor that the Attorney General can act as prosecutor, prosecuting judicial discipline complaints before the Commission. What is painfully clear, as mentioned previously, is that the Attorney General may not be allowed to act as either advisor or prosecutor.[13]

*888
Ground Three: Attorney Misconduct

Petitioner Whitehead maintains as a third and independent ground for asking that the Attorney General be removed from this case the Attorney General’s intemperate and accusatory public statements relating to these proceedings. Because of the foregoing conclusions regarding disqualification based upon constitutional and conflict of interest grounds, it is unnecessary to presently rule on Petitioner Whitehead’s allegations of ethical misconduct on the part of the Attorney General or the effect that this conduct might have on Petitioner Whitehead’s ability to receive fair treatment, which is the essence of due process.

INVESTIGATION OF BREACHES OF CONFIDENTIALITY AND VIOLATIONS OF OTHER RULES OF THIS COURT

Petitioner Whitehead claims not only that he has been severely prejudiced by the unlawful public disclosure of charges which the Nevada Constitution requires to be kept confidential, he claims that the integrity of the whole judicial discipline process is endangered by what appear to be almost routine “leaks” of judicial disciplinary proceedings.
Now is not the time to go into extended discussion of the confidentiality provisions mandated by the Nevada Constitution injudicial discipline matters, but a few words may be said.[14] The argument of some is, of course, that judges are no different from any other public official and that if any allegations of misconduct are made by anyone, such charges should immediately be open to the public. The counterargument (and the one adopted by the framers of the Nevada Constitution) is that the judiciary depends to a large degree for its effectiveness on the trust and confidence that the people place in that institution’s ability to render, day-today, fair and impartial decisions. By its very nature, the judiciary deals with disputes that often leave litigants or counsel with negative or agitated feelings. As a result, many complaints may *889 be generated and sent to the Commission about judges that are entirely without merit. If all of these unfounded complaints were available to the public and the media, without any inquiry into their substance, public esteem for the judiciary as a whole would suffer, thus making it more difficult for the one branch of government that should be a safe haven for the impartial and fair resolution of disputes, to inspire public confidence in the integrity of judicial proceedings.
To a great extent, the willingness of litigants — great and small — to respect and obey the judgments issued by our courts depends upon a deserved public perception that the judiciary does, in fact, dispense justice. Premature exposure of meritless complaints against judges would make it appear that our judges were guilty of rampant misconduct and would threaten the independent function of the judiciary. See Kamasinski v. Judicial Review Council, 797 F. Supp. 1083 (D. Conn. 1992).
Whichever side of this argument one might want to espouse, the fact remains that, at present, all complaints against judges must, as commanded by the Nevada Constitution and by the rules of this court enacted in accordance with the direct command of the Constitution, remain confidential until there has been a finding of probable cause and a formal statement of charges has been filed as a public document. Despite the voices of those who minify the seriousness of breaches of confidentiality, we are unable to arrogate to ourselves a superior wisdom or authority than the people of this State who mandated the confidentiality of judicial discipline proceedings in our fundamental law, the Nevada Constitution.
The Commission is entrusted with the constitutional responsibility of safeguarding the confidentiality of Commission proceedings until, under the current Commission rules, there has been a finding of probable cause. One would therefore assume that the Commission would be greatly concerned about the breaches of confidentiality in this case and in others that are documented in this record. One would further assume or at least hope that as soon as the Commission learned of these constitutional violations it would have taken immediate steps to uncover the source of the breaches and of the “leaks” that have punctuated these proceedings and expanded them into a vastly more complex and multidimensional dispute. To our dismay, the Commission and the Attorney General have not only evinced no concern about the breaches of confidentiality, but they have taken affirmative steps to oppose any inquiry into the source of the “leaks.”[15]
*890 It is most apparent that someone must get to the bottom of these flagrant constitutional infractions. At this stage of the proceedings we are not prepared, as a court, to launch a full investigation into these matters. Although it is clear that we have the authority to appoint a fact-finding master to delve into the source of the violations,[16] we are not ready at this time to define the scope of activities to be conducted in this regard. We do, however, conclude that an investigation into the breaches of confidentiality is warranted. A master will have to be appointed having the power to issue subpoenas and other compulsory process. In due time the court will issue an order naming the court master or other investigator and defining the scope of the powers and duties that will be necessary to carry out the required investigation.
For the reasons discussed above,
IT IS HEREBY ORDERED:
1. The Attorney General and her staff, and Special Deputy Attorney General Donald J. Campbell shall be, and the same hereby are removed as counsel to the Commission in the instant proceeding, and the Attorney General and her staff shall hereafter take no part or assume any role in disciplinary matters brought before the Commission.[17]
2. A special master shall hereafter be appointed by the court and shall be specially empowered by further and specific order of this court to conduct such investigations as shall be necessary to determine the sources of the unlawful breaches of confidentiality that have occurred in these proceedings and the extent to which they may have impacted Petitioner’s due process rights.[18]
Steffen and Springer, JJ., and Zenoff, Sr. J.[19] concur.

 Although the Attorney General and the Commission have continued to assert that Special Deputy Attorney General Don Campbell was not and is not acting on behalf of, or in concert with, the Attorney General’s office, we put that contention to rest in Whitehead II, noting in general the contacts among Assistant Attorney General Brooke Nielsen, Mr. Campbell, and the Commission, and noting in particular, the fact that Mr. Campbell was placed under contract to the Attorney General to serve “at the pleasure of the Attorney General” and was required to “report regularly to the Attorney General concerning the status of the above-named case.” Whitehead v. Comm’n on Jud. Discipline, 110 Nev. 380, 873 P.2d 946 (1994). Furthermore, the Attorney General and Mr. Campbell have both signed the bulk of pleadings filed in this matter on behalf of the Commission. Mr. Campbell appeared at oral argument and argued on behalf of the Commission along with Assistant Attorney General Nielsen.

 This interlocutory opinion represents one more incremental measure leading to the eventual resolution of what has become a proceeding transmuted from a comparatively simple writ proceeding to a proceeding far more expansive and complex than otherwise warranted. Petitioner simply invoked this court’s exclusive jurisdiction in interpreting, for the first time, the meaning of several of the current permanent rules of the Commission. It is now clear, that in order to provide absolute clarity in the final disposition of this matter issued by this court, and to provide an unmistakable justification for this court’s actions, it will be necessary to show, as the evidence will demonstrate, that the Commission has been functioning on an ad hoc basis in the imposition of discipline, and that adherence to Commission rules, in an even-handed, non-discriminatory methodology is essential to the independence of the Nevada judiciary. It is this court’s intention to finalize these proceedings as soon as humanly possible, consistent with the demands of judicial responsibility and due process.

 NRS 228.120(2) states that the attorney general may:
Exercise supervisory powers over all district attorneys of the state in all matters pertaining to the duties of their offices, and from time to time require of them reports as to the condition of public business entrusted to their charge.

 In Whitehead I, Judge Guy wrote that he would “order the Attorney General, her associates and Special Deputy Attorneys General to have no further contact with this case or any other matter appearing before the Commission.” Judge Guy further observed as follows:
It is certain that to permit the executive department, to wit, the Attorney General, whether upon request or otherwise, to be counsel or in any way participate in the possible disciplinary action procedure of a justice or district judge before whom the Attorney General must appear for judicial decisions, could cause investigations, brought about for political reasons or because of decisions that were unfavorable.
Whitehead v. Comm’n on Jud. Discipline, 110 Nev. 128, 166, 869 P.2d 795, 818-19 (1994) (Guy, D. J., concurring).
Our present opinion reflects the previously expressed judgment of Judge Guy, on this issue.

 In Goldman v. Nevada Comm’n on Judicial Discipline, 108 Nev. 251, 830 P.2d 107 (1992), the Commission in fact hired independent counsel to prosecute the judge.

 Our present holding relative to separation of powers is consistent with our prior rulings in this area. For example, in Dunphy v. Sheehan, 92 Nev. 259, 549 P.2d 332 (1976), this court held that the section of Nevada’s Ethics in Government law excluding members of the judiciary from regulation under that law was mandated by the separation of powers clause of the Nevada Constitution. Id. at 265, 549 P.2d at 336. Similarly, in Galloway v. Trues-dell, this court held that it was an impermissible violation of separation of powers to require district court judges to determine which ministers were qualified to administer legally valid marriage ceremonies. Id. at 31, 422 P.2d at 249. In In Re Platz, this court held that state bar disciplinary proceedings did not violate separation of powers because this court retained the ultimate decision as to any penalty to be imposed. 60 Nev. 296, 302-303, 108 P.2d 858, 861 (1940); see also Desert Chrysler-Plymouth v. Chrysler Corp., 95 Nev. 640, 600 P.2d 1189 (1979) (statute requiring district courts to determine “good cause” for issuing automobile dealership licenses violates separation of powers); State v. Douglass, 33 Nev. 82, 110 P. 177 (1910) (legislature may not combine the offices of Clerk of the Supreme Court and Secretary of State). This line of cases is bolstered by a persuasive opinion of the Attorney General which concludes that, because a Highway Patrol Trooper is a member of the executive branch of government, it would be “constitutionally *881 invalid for an employee of the patrol to simultaneously serve as a member of the state legislative or judicial departments.” Op. Att’y Gen. No. 168 (May 22, 1974). A member of the executive branch is simply not constitutionally permitted to act in a judicial capacity.

 Contrary to respondent’s assertions, the Judicial Discipline Commission is not just another administrative agency which can combine investigative, prosecutorial and judging functions. As this court held in Whitehead I, the Commission is a court of judicial performance, created by the Nevada Constitution as a part of the judicial branch of government. Whitehead v. Comm’n on Jud. Discipline, 110 Nev. 128, 160 n.24, 869 P.2d 795, 815 n.24 (1994); c.f., Laman v. Nevada R. E. Adv. Commission, 95 Nev. 50, 589 P.2d 166 (1979).

 NRS 41.0338-41.0339 would allow the Commission members to seek the representation of the Attorney General if they were sued for actions taken in their official capacity.

 The proposed ABA Model Rules suggest that independent counsel be retained to act as legal counsel to the commission to avoid these very conflicts.

 Of course the Attorney General is constitutionally authorized to pursue criminal investigations and prosecutions of judges or justices. Nev. Const, art. 5, § 22; NRS 228.175(2) and (4).

 The ABA Standards Relating to Judicial Discipline and Disability Retirement currently in force also note these same concerns. For example, Standard 2.1, entitled “Need for Independence,” provides that “[t]he commission *886 should be independent of and free from interference from the executive or legislative branches and, although operating within the judicial branch, should report only to the supreme court.” American Bar Association, Standards Relating to Judicial Discipline and Disability Retirement 9 (February, 1978). Similarly, the commentary to Standard Rule 2.8 states that the use of law enforcement officers such as “members of the attorney general’s staff” to perform commission functions “is not recommended . . . [as] [t]heir use may also interfere with the independence of the judiciary.” Id. at 15.

 The Attorney General appears in this case to have initially recognized this conflict when she requested the Board of Examiners to provide the funds to hire Don Campbell as a Special Deputy Attorney General, stating that the hiring was necessary in part because the Attorney General’s office had a potential conflict of interest in this case. (Contract between Attorney General and Don Campbell.) See Petitioner’s Motion to Preclude Further Involvement, Exhibit 2.

 The Dissent garners suggestions that the Majority in this limited Opinion somehow is, or will prevent, the Commission from carrying out its constitutional mandate. There is no intent and none should be inferred that this limited Opinion subjugates or prevents the Commission from fulfilling its duties. This limited Opinion only prevents the Attorney General, the Attorney General’s regular deputies and the Special Deputy Attorney General, in this matter, from any further representation of the Commission in these proceedings, or in any proceedings before the Commission. It does not prevent the Commission from engaging its own independent counsel as provided in article 6, section 21, subsection 9(a) of the Constitution and by the rules of this court. On the contrary, this limited Opinion directs the Commission to engage independent counsel for this and any other matters before the Commission.
In Goldman v. Nevada Comm’n on Judicial Discipline, 108 Nev. 251, 830 P.2d 107 (1992), independent counsel was appointed for the Commission as the Attorney General either recognized the conflict or the constitutional prohibition. Likewise, in these proceedings, the Attorney General initially recognized the conflict and requested special counsel to represent the Commission. Had the Attorney General not appointed the special counsel or Special Deputy Attorney General, inter alia, responsible to the Attorney General for his retention and payment, then this limited Opinion may not have been necessary except in future proceedings.
The Dissent infers that this Opinion nullifies NRS 1.450(2). If that is the effect of preventing the Attorney General from proceeding as the attorney for the Commission, then, so be it. This will not be the first time, nor the last, *888 that this court and other courts have stricken portions or all of legislative acts as being unconstitutional.
The Dissent raises the presumption that this Opinion rests its arguments on the assumption that the Attorney General will he unable to resist the temptation to engage in misconduct with respect to judges. This court has so often reversed judgments and criminal convictions, not upon any actual misconduct, but upon the perception or assumption that misconduct could occur, either intentionally or unintentionally. Given the history of overzealous or over-aggressive prosecutors in these United States, there can be no doubt that misconduct does and has occurred either intentionally or unintentionally.

 “The supreme court shall make appropriate rules for: (a) The confidentiality of all proceedings before the commission, except a decision to censure, retire or remove a justice or judge.” Nev. Const, art. 6, § 21(5)(a); see ARJD 5 and 6.

The Commission and the Attorney General’s office have steadfastly opposed any investigation into the leaks, arguing at various times that Petitioner leaked the confidential information, that this court lacked the *890 authority to enforce these constitutional provisions, and that the First Amendment prevents this court from requiring the Commission to enforce its own confidentiality rules.

 See, e.g., Young v. Board of County Comm’rs, 91 Nev. 52, 530 P.2d 1203 (1975).

 The Commission is herein authorized to obtain a Nevada attorney. There are a multitude of Nevada attorneys who are well-qualified to act as counsel to the Commission to replace the Attorney General, her staff, and any special deputy attorney general, to continue in this matter and in any other matter presently before the Commission and/or to be brought before the Commission.

 The Governor appointed the Honorable Addeliar D. Guy, Judge of the Eighth Judicial District Court, to sit in place of The Honorable Cuff Young, Justice, who is disqualified because he is a member of the Commission on Judicial Discipline. Nev. Const, art. 6, § 4.