VIRGINIA LEE SANDY, Petitioner, *v.* THE FIFTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the County of Nye, and THE HONORABLE JOHN P. DAVIS, District Judge, Respondents, and THE STATE OF NEVADA, Real Party in Interest.

No. 29052

March 27, 1997                                    935 P.2d 1148

*David C. Polley,* Las Vegas, for Petitioner.

*Frankie Sue Del Papa,* Attorney General, and *Julie Slabaugh,* Deputy Attorney General, Carson City; *Robert S. Beckett,* District Attorney, Nye County, for Respondents.

## OPINION

By the Court, Shearing, C. J.:

On May 10, 1996, the Nye County District Attorney ("D.A.") charged petitioner Virginia Lee Sandy ("Sandy"), in the Justice Court of Pahrump Township, with first-degree murder with use of a deadly weapon. Following plea negotiations, Sandy agreed to plead guilty to voluntary manslaughter and to waive her right to a preliminary hearing. During an appearance before a justice of the peace on July 2, 1996, Chief Deputy D.A. Thomas Cochrane ("Cochrane") stated that the D.A.'s office had agreed to the plea bargain. Cochrane also stated that the D.A. had agreed to file an amended information charging Sandy with voluntary manslaughter and to recommend a sentence of five years plus an enhancement of five years for use of the deadly weapon.

On July 5, 1996, the D.A. filed an information in the Fifth Judicial District Court charging Sandy with first-degree murder with use of a deadly weapon. On July 9, 1996, the D.A. filed an amended information charging Sandy with voluntary manslaughter with use of a deadly weapon.

On July 9, 1996, Sandy appeared for arraignment before respondent Judge John P. Davis ("Judge Davis"). Sandy's counsel, David C. Polley ("Polley"), informed Judge Davis of the plea bargain and placed into evidence a "guilty plea agreement" that had been signed by Sandy and Polley, but which had not yet been signed by the appropriate member of the D.A.'s office. At that time, Judge Davis expressed concern that Sandy had apparently been bound over to the district court on a charge of first-degree murder, yet the plea bargain was for voluntary manslaughter. The judge continued the proceedings to allow the parties to file points and authorities on a trial judge's capacity to reject plea bargains.

At the July 23, 1996 hearing on the matter Judge Davis rejected the plea bargain. He explained that the bargain was made

with the "obvious intention of circumscribing a Judge's discretion in pronouncing a sentence." He noted that if he sentenced as harshly as possible under the manslaughter charge, Sandy could be eligible for parole in eight years. Judge Davis compared this potential sentence with that for second-degree murder because "[a]ssuming . . . that the first degree murder charged in this case is overkill, surely this is a case where a reasonable jury might return a conviction for second degree murder." Judge Davis determined that under the second-degree murder charge, Sandy would not be eligible for parole for at least twenty years. In conclusion, Judge Davis stated

> The Court finds this [potential plea bargain] . . . a serious infringement upon the judiciary's responsibility to sentence.
> To do as the lawyers suggest, declares an open season on people aggravated in a circumstance that would appear to not justify death. This plea bargain clearly sends an inappropriate message and infringes on this Court's responsibility.

On August 30, 1996, Sandy filed the instant petition. On September 13, 1996, this court ordered the Attorney General's office to answer on behalf of the respondent district court.

## DISCUSSION

Mandamus is an extraordinary remedy, and the decision as to whether such a writ will be entertained lies within the discretion of this court. Poulos v. District Court, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982). A writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust or station, NRS 34.160, or to control an arbitrary or capricious exercise of discretion. Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981). A "writ shall be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170.

Here, Sandy will likely proceed to trial on a charge of murder in the second degree if this court does not grant her petition for a writ of mandamus. Thus, she could only appeal the instant plea bargain issue after resolution of the murder charge. We conclude that Sandy has no adequate remedy in the ordinary course of law, and we elect to entertain her petition.

Sandy contends that a trial judge has only limited authority to reject a valid plea bargain; therefore, a plea agreement must be accepted if voluntarily and knowingly entered. Thus, she con-

tends that Judge Davis abused his discretion by rejecting her plea bargain. Sandy also contends that allowing a trial judge broad authority to reject plea bargains leads to impermissible judicial participation in plea negotiations, which violates the principle of separation of powers. She also seemingly contends that by permitting Judge Davis to reject the manslaughter plea in the instant case, Judge Davis essentially and improperly dictated that a second-degree murder charge be filed instead.

The State contends that the district court properly exercised its discretion to reject the plea bargain on the ground that it infringed upon the court's sentencing authority.

A district judge may, in his or her discretion, refuse to accept guilty pleas, including those arising out of plea bargains. NRS 174.035. However, the judge is obligated to consider seriously the proffered plea. Sturrock v. State, 95 Nev. 938, 941, 604 P.2d 341, 343 (1979). The judge may not reject a guilty plea arising out of a plea bargain merely because the court disagrees with the prosecutor's view of the "public interest" as it pertains to the subject case. Sparks v. State, 104 Nev. 316, 323, 759 P.2d 180, 184-85 (1988); *accord* United States v. Ammidown, 497 F.2d 615, 622 (D.C. Cir. 1973). If the judge rejects a plea bargain, he or she "must provide a reasoned exercise of discretion" and must state reasons for the disapproval. *Sparks,* 104 Nev. at 323, 759 P.2d at 184.

As explained in *Sparks:*

"The authority has been granted to the judge to assure protection of the public interest, and this in turn involves one or more of the following components: (a) fairness to the defense, such as protection against harassment; (b) fairness to the prosecution interest, as in avoiding a disposition that does not serve due and legitimate prosecutorial interests; (c) protection of the sentencing authority reserved to the judge. The judge's statement or opinion must identify the particular interest that leads him to require an unwilling defendant and prosecution to go to trial.

The judge may withhold approval if he finds that the prosecutor has failed to give consideration to factors that must be given consideration in the public interest, factors such as the deterrent aspects of the criminal law. However, trial judges are not free to withhold approval of guilty pleas on this basis merely because their conception of the public interest differs from that of the prosecuting attorney. The question is not what the judge would do if he were the prosecuting attorney, but whether he can say that the action

of the prosecuting attorney is such a departure from sound prosecutorial principle as to mark it an abuse of prosecutorial discretion."

*Id.*, 759 P.2d at 184-85 (quoting *Ammidown,* 497 F.2d at 622). Thus, *Sparks* holds that a trial judge considering a plea bargain must determine, in light of the three components listed above, whether the prosecution's action of offering the plea amounts to an abuse of prosecutorial discretion. The judge must then elect to accept the plea or reject it. Rejections may not be made without explanation, but must be accompanied by findings of fact explaining with particularity the reasons for the rejection.

Judicial power to reject plea bargains serves to modify and condition the absolute power of the prosecutor, consistent with the doctrine of separation of powers, by establishing a check on the abuse of prosecutorial (executive) prerogatives. *Cf.* United States v. Cowan, 524 F.2d 504, 513 (5th Cir. 1975), *cert. denied* 425 U.S. 971 (1976). Because plea agreements may not invade "the traditionally judicial function of what penalty to impose," judges are given power to reject plea bargains which invade this authority.[1] United States v. Escobar Noble, 653 F.2d 34, 37 (1st Cir. 1981).

Hence, in *Sparks,* we recognized the division of executive and judicial authority as well as the judge's power to reject pleas to protect judicial "sentencing authority." *Sparks,* 104 Nev. at 323, 759 P.2d at 184-85; *see* NRS 174.035. However, this judicial discretion to reject is not meant to invade the legitimate function of the prosecutor. *See* United States v. Robertson, 45 F.3d 1423, 1437-38 (10th Cir.), *cert. denied,* 116 S.Ct. 133 (1995); *Ammidown,* 497 F.2d at 622. For this reason, judges may not exercise this discretion to fulfill their own opinion of the public interest, but may reject plea arrangements only when there has been an abuse of prosecutorial discretion.

Other jurisdictions reviewing whether a plea arrangement infringes the judicial prerogative to sentence scrutinize the reasons underlying the prosecutor's decision to offer the plea bargain in the first place. In *Escobar Noble,* the United States Attorney had proposed that the defendant plead guilty to misdemeanor possession of marijuana, which carried a maximum prison sen-

---

[1]Thus, for example, trial judges need not accept sentence bargains, *i.e.,* plea bargains which purport to guarantee defendants a certain sentence, because they offend the judicial prerogative to sentence. *See* United States v. Robertson, 45 F.3d 1423, 1439 (10th Cir.), *cert. denied,* 116 S.Ct. 133 (1995); United States v. Miller, 722 F.2d 562, 564 (9th Cir. 1983).

tence of one year, in exchange for dismissal of the felony indictment. 653 F.2d at 37. The district court rejected the plea to leave open the possibility of felony sentencing. *Id.* at 36. In the district judge's view, the plea proposal was not sufficiently linked to a prosecutorial purpose, such as insufficiency of trial evidence, doubt as to the admissibility of certain evidence, or the need to bring another felon to justice, to justify acceptance of the plea bargain. *Id.*

The First Circuit affirmed, noting additionally that the case did not involve the prosecutorial interests of avoiding a prosecution of uncertain success or conserving prosecutorial resources, or any other separate factor necessitating acceptance of the plea. The proposed plea bargain was intended only to control sentencing. *Id.* at 37. Accordingly, the First Circuit concluded that "[t]his is not a case where acceptance of the plea agreement is both reasonable and necessary to secure a legitimate and important prosecutorial interest" nor does it involve some other compelling, independent consideration. *Id.* at 36; *accord Ammidown,* 497 F.2d at 622-23 ("a judge is free to condemn the prosecutor's agreement as a trespass on judicial authority only in a blatant and extreme case.").

It follows from *Escobar Noble* and *Ammidown* that a trial judge may not reject a plea bargain solely on the grounds that the plea prevents the judge from sentencing as harshly as he or she would like. Plea bargains generally result in a reduction of charges against the defendant, and consequently a diminishment of the judge's authority to sentence. Allowing trial judges to reject a plea bargain for infringing upon judicial sentencing authority because the original indictment charged the defendant with a more serious offense affords judges too much discretion to inhibit the role of the prosecutor. Such broad judicial authority is inconsistent with *Sparks* and with the concept of separation of powers embodied in the Nevada Constitution. *See generally* Nev. Const. art. 3, § 1; Whitehead v. Comm'n on Jud. Discipline, 110 Nev. 874, 909, 878 P.2d 913, 935 (1994) (SHEARING, J., dissenting). Moreover, courts do not know the relative strengths of any individual cases or charges, which charges are best initiated at which time, and the most efficient allocation of prosecutorial resources. *See Robertson,* 45 F.3d at 1438.

Accordingly, we hold that rejection of a plea bargain based upon infringement of judicial sentencing authority is inappropriate absent a finding that the prosecutor had no valid prosecutorial interest or other compelling independent consideration for

refusing to proceed to trial.[2] In so holding, we by no means imply that the district court should be satisfied to accept mere conclusory statements by a prosecutor that a particular plea bargain serves the public interest. *See Ammidown,* 497 F.2d at 620.

We reiterate that judges have the power to reject plea bargains so long as their decision-making process complies with *Sparks*. Judges must provide a reasoned exercise of discretion and state reasons for disapproval of the plea bargain. *See Sparks,* 104 Nev. at 323, 759 P.2d at 184. These reasons should neither be cursory indications of the judge's view of public opinion nor merely based upon disagreement with prosecutorial charging decisions. Judges must make findings of fact explaining their reasons for rejection with particularity, or they must accept the plea bargain. Findings should be based upon judicial inquiry into the prosecution's reasons for offering the plea. Only when these reasons amount to an abuse of prosecutorial discretion should the plea be rejected.

In the instant matter, the record shows that Sandy was bound over to the district court on a first-degree murder charge. Prior to appearing before Judge Davis the parties had agreed to, but had not yet wholly consummated, a plea bargain reducing the charge to voluntary manslaughter. Judge Davis' order reflected that the disparity in sentencing between a voluntary manslaughter charge and a murder charge prompted his rejection of the plea bargain. However, this disparity alone is insufficient to reject a plea bargain without evidence that the prosecution had no valid reason for not proceeding to trial. Judge Davis made no inquiry into the prosecutor's grounds for offering the plea and made no determination as to whether the plea was offered for a valid prosecutorial purpose or other compelling reason. Consequently, the court could not have properly determined whether a rejection of the plea bargain was warranted. The district court improperly applied subdivision (c) of *Sparks* to reject the plea bargain and thus manifestly abused its discretion.

Accordingly, we grant Sandy's petition and direct the clerk of this court to issue a writ of mandamus compelling the district

---

[2]We recognize that certain federal circuits give trial judges broader powers, as compared with those enunciated in *Ammidown,* to reject plea bargains. *See* United States v. Moore, 637 F.2d 1194 (8th Cir. 1981) (applying a "broad discretion" standard); United States v. Bean, 564 F.2d 700 (5th Cir. 1977) (reversing trial judges' plea bargain rejections only where arbitrary and capricious and normally only where the sentencing decision jeopardizes a constitutional right). However, we do not choose to follow those decisions.

court to reconsider the plea bargain in view of the principles announced in this decision.[3] If the plea bargain is properly rejected and Sandy does not agree to new plea negotiations, Sandy will be entitled to a preliminary hearing.

In light of this opinion, we decline to address Sandy's remaining contentions.

ROSE, YOUNG, and MAUPIN, JJ., concur.

SPRINGER, J., dissenting:

On July 5, 1996, the district attorney of Nye County charged by information that Ms. Sandy "deliberately" murdered Elaine Werstler "by cutting her throat and stabbing her in the chest with an eight-inch serrated-blade." On July 9, 1996, the district attorney filed an amended information which eliminated the murder charge and, instead, charged voluntary manslaughter, the new charge being that Ms. Sandy stabbed Ms. Werstler "without premeditation and upon a sudden heat of passion."[1]

The district judge did not accede to the State's dismissing the murder charge and refused to accept a guilty plea to manslaughter as part of a "plea bargain." The judge pointed out that this case involved "a violent death result[ing] from the use of a deadly weapon" and expressed his belief that under the circumstances of this case as he knew them a jury might return a murder verdict. Although the district judge expressed his concern about his "sentencing authority," it is apparent to me from reading this limited

---

[3]Apparently, no member of the D.A.'s office ever signed a formal plea agreement memorializing the plea bargain negotiated with Sandy. Any attempt by that office to rescind its plea offer should be analyzed under this court's decision in State v. Crockett, 110 Nev. 838, 843, 877 P.2d 1077, 1079-80 (1994).

[1]I would note that the amended information probably does not state a public offense. The amended information cites "a violation of NRS 200.040/ NRS 193.165." The information does not cite NRS 200.050 (" 'Voluntary manslaughter' defined.") which elaborates on the definition of the crime of manslaughter. Under NRS 200.040 and NRS 200.050, the elements of voluntary manslaughter are (1) the "unlawful killing of a human being, without malice express or implied, and without any mixture of deliberation," (2) the killing must be "upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible," and (3) there "must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing."

In my view, the district judge did not err in refusing to accept a plea to a voluntary manslaughter information that made no mention of sufficient provocation in the form of a "highly provoking injury" or an attempt to "commit a serious personal injury" upon the defendant.

record that the judge's principal concerns related to his belief that a prosecution for manslaughter under the circumstances of this case "does not serve due and legitimate prosecutorial interest." Sparks v. State, 104 Nev. 316, 323, 759 P.2d 180, 184-85 (1988). It appears to me that the judge did not think that this was a manslaughter case and that it was, in his view, a case that called for no less than a murder charge. The judge was clearly of the opinion that dismissing murder charges in this case would not serve legitimate prosecutorial interests or the interests of the people of this state. He was entitled to have and to act upon this opinion.

Unfortunately, the record in this writ proceeding does not furnish any of the facts surrounding the crime. We know only that Ms. Sandy is accused of killing a woman by slitting her throat and stabbing her in the chest with a serrated knife. There is nothing in the record that would divulge what "heat of passion" or what kind of sufficient "provocation" that the district attorney might have had in mind when he decided to reduce the charges from murder down to voluntary manslaughter; but I assume that the district judge was in a position to make a judgment on the question of whether the district attorney was grossly undercharging Ms. Sandy—certainly in a better position than this court is. Absent some showing by Ms. Sandy that the judge abused his discretion in ruling as he did, I would defer to the judgment of the district judge.

If this case were to turn out to be a proper case of voluntary manslaughter and a case involving heat of passion and sufficient provocation, as defined in the statute, there is no reason to suspect that a jury would not recognize the diminished liability and refuse to convict for murder. Soundness of the district judge's decision to refuse to dismiss murder charges and permit the district attorney to proceed on manslaughter alone should be presumed by this court to be correct and to have been supported by the facts of the case that were known to the judge at the time. We have no way of knowing otherwise. For all we know, the judge might quite properly have seen this case as a case of cold-blooded murder that was of such a nature that dismissing murder charges would be unthinkable under the circumstances.

If, for example, the district attorney were to have accepted a bargain in which murder charges were to be dismissed and this stabbing, throat-slitting defendant was to be permitted to plead guilty to, say, simple assault, I think no one would argue with the judge's right to refuse to accept such a bargain. Such a bargain would be clearly seen as not serving the prosecutorial interests of the executive or of the people. It seems to me that we are rushing to judgment in this case and interfering with a legitimate function

of the trial court. Whether or not there has been an abuse of prosecutorial discretion is not a matter that we are presently competent to judge, based on the record before us. Until it is made to appear, on the record, that the district attorney's dismissing murder charges in this case would not be an abuse of prosecutorial discretion, I would defer to the judgment of the trial court in the assumption that there has been in this case such "a sufficient deviation from sound prosecutorial principles" as to justify the judge's decision. I would deny Ms. Sandy's petition and therefore dissent to the order granting the writ.