920 P.2d 491 (1996)
In re Petition for a Writ of Prohibition or in the Alternative for a Writ of Mandamus.
The Honorable Jerry Carr WHITEHEAD, Petitioner,
v.
NEVADA COMMISSION ON JUDICIAL DISCIPLINE, Respondent.
No. 24598.
Supreme Court of Nevada.
July 5, 1996.
Stricken as Void July 12, 1996.[*]
Ohlson & Springgate, Reno; Hamilton & Lynch, Reno; Gentile and Porter, Las Vegas; Laura Wightman FitzSimmons, Las Vegas, for Petitioner.
Leonard I. Gang, Carson City, for Respondent.
Peter Alpert, Las Vegas; Gerald Stern, New York City, for Amicus Curiae Association of Disciplinary Counsel.
Leo Puccinelli, Elko, for Amicus Curiae Ad Hoc Committee for the Preservation of an Independent Judiciary.
Geoffrey Giles, Reno, for Amicus Curiae American Judicature Society.

SUPPLEMENTAL OPINION
PER CURIAM:

COURT'S SYLLABUS
1. Statement of the Case. The subject matter of this opinion is the continued effort by two justices of the supreme court, Justices Young and Rose, who are disqualified to act in this case, to thwart the judgments of this court by clearly improper and unlawful means. The "court" in this case, a duly empaneled court made up of three supreme court justices and two jurists designated to take the place of the disqualified justices, Young and Rose, has entered lawful and unimpeachable judgments which relate (a) to preservation of Judge Whitehead's due process rights and (b) to the duty of the court not to condone violations of its orders and other contempts of court.
This opinion is occasioned by a second unlawful attempt by the disqualified justices, Young and Rose, to reenter this case and to issue bogus, collateral "orders" that purport to contradict or overrule the judgments of the supreme court entered in this case. Once before, the disqualified justices attempted to intrude themselves into this case and to overrule the court's judgments by signing an ex parte "administrative order," purporting to overrule the judgments of the *492 court. The court declared this "administrative order" to be void (111 Nev. 1459, 908 P.2d 219). Now, they try again to interfereÔÇöthis time by an ex parte "writ of prohibition" issued by the disqualified justices without notice to the parties in this case. Justices Young and Rose have now issued an order declaring that certain of the court's judgments in this case are "invalid and unenforceable" and that the duly-empaneled members of the court must "cease and desist from any further action." As with the void "administrative order," it is now necessary for the court to declare void this latest intrusion into the case by disqualified justices. This is the purpose of this opinion.
2. The Rule of Necessity. Although the latest attempt by Justices Young and Rose to reenter this case is void on its face, the court considers it necessary and prudent to make formal declaration of this circumstance, as it did with respect to the ex parte "administrative order."
NRS 2.140 provides that "[t]hree justices shall constitute a quorum for the transaction of business." Justices Young and Rose have rendered it impossible for the court to have a quorum of three in this case by frustrating the constitutional process for replacing retiring or incapacitated justices.
There are two vacancies on the court in this case. District Judge Guy has retired. Senior Justice Zenoff declines to serve on the panel and has asked to be replaced. The chief justice, in accordance with long-established practice, has requested the governor to appoint replacements for the two absent justices, but the governor refuses to commission the requested replacements (Judge John P. Davis and Senior Judge Joseph O. McDaniel, who have agreed to sit on this panel). The governor bases his refusal to perform his constitutional duty to fill vacancies on this court on a rule recently adopted by Justices Young and Rose and the dissenting justice. The new rule prohibits the chief justice from filling vacancies absent the concurrence of a "majority of the elected justices." The present status of this case is that under the rule as written, it is impossible for the vacancies on the court in this case to be filled. The only two "elected justices" who seek the replacement of absent justices in this case are Chief Justice Steffen and Justice Springer. Not only do the remaining three "elected" justices refuse to request the governor to make the replacements, the two disqualified justices (Young and Rose) are not competent to participate in the replacement process.[1] Two vacancies remain indefinitely unfilled, and the court is therefore unable to function as a court in the manner contemplated by the laws of this state. The resulting impasse has, as fully supported by authorities cited in this opinion, rendered it necessary for two justices, Justices Steffen and Springer, to issue this opinion so that the void writ of prohibition[2] now on file will not stand as the apparent law of this state.
3. Present Status of Case. This is the sixth formal opinion issued in this case. Past rulings of the court that are of most significance to the present opinion are:
a) A judge accused of judicial misconduct is entitled, under the Nevada Constitution and rules of the Discipline Commission (ARJD), to confidentiality at all times prior to a finding of probable cause. This includes proceedings for judicial review provided for by ARJD, Rule 40(7).
*493 b) The disciplinary prosecution of Judge Whitehead was conducted in violation of Judge Whitehead's due process rights and in violation of the Nevada Constitution and Commission rules. The court did not order the Discipline Commission to stop proceedings against Judge Whitehead but, rather, to proceed against him only in accordance with the Constitution and Commission rules.
c) There were serious, repetitive contempts of the supreme courtÔÇösome in the form of violations of court orders relating to Judge Whitehead's procedural rights and right to confidentiality, some in the form of direct refusals to obey the orders of the supreme court and some in the form of false defamatory public statements made against the court. The court decided that it was bound to hold those responsible for these contempts accountable for their actions. The court ruled that it was necessary to appoint a special master to uncover facts relating to repeated contempts of court and to make recommendations to the court relative to the contemptuous conduct. The court appointed a special master for this purpose.
4. Conclusion. The void, ex parte orders of Justices Young and Rose (both the "administrative" order and the prohibition order) purport to overrule vital judgments of this court. The disqualified justices have not challenged the court's judgments holding that Judge Whitehead's due process rights have been violated and that the Commission must proceed against Judge Whitehead in a proper manner. The disqualified justices have, however, "ruled" that this court's official, published judgments relating to a judge's right to confidentiality are "void." The disqualified justices have now re-issued orders purporting to thwart the court's investigation into the contempts of court.
Whether Judge Whitehead has been denied due process, whether judges are entitled to confidentiality until there has been a finding of probable cause and whether serious contempts of this court should be followed up or ignored are, of course, issues which have already been decided by this court and are the law of the case. Such are not, obviously, matters which are subject to interference by the disqualified justices, Young and Rose. The issue presented is whether Justices Young and Rose, who were disqualified from acting in this case, have the power, directly or indirectly, to overrule the judgments of the court in this case. They do not have such power; accordingly, all actions of Justices Young and Rose that affect in any way the judgments of the court in this case are declared to be void, and specifically, the opinion and writ issued under Case No. 27847 are declared void and of no legal force or effect.

I. NECESSITY, BASES AND AUTHORITY FOR ISSUING THIS SUPPLEMENTAL OPINION

This supplemental opinion, born of necessity, and entirely unique in nature, is reluctantly issued in an effort to preserve the rule of law and respect for law in the State of Nevada. The necessity for this two-justice supplemental opinion cannot be understood or respected without a full disclosure of the circumstances underlying its issuance.
The panel of this court that has had, and continues to have, lawful jurisdiction over Case No. 24598 (the Whitehead case) was, and is, in every respect the Supreme Court of the State of Nevada insofar as that case is concerned. The Whitehead court presently consists of a majority (three) of the elected members of the Nevada Supreme Court, Chief Justice Steffen, Justice Springer and Justice Shearing. Senior Justice Zenoff was appointed to sit on the Whitehead case in the place of then-Chief Justice Rose by Justice Steffen pursuant to Art. 6,  19 of the Nevada Constitution, and Supreme Court Rule 10. The other member of the Whitehead court during most of its tortured history and until ill health and retirement from judicial office forced his resignation from the court, was District Court Judge Addeliar Guy, who was appointed by the governor as requested by then-Chief Justice Rose pursuant to Art. 6,  4 of the Nevada Constitution.
After Justices Shearing, Rose and Young issued an administrative order rescinding the appointment of a special master by the Whitehead court, and thereafter sought, by administrative order, to terminate the Whitehead panel, the Whitehead court was forced *494 to issue its opinion in Whitehead v. Commission on Judicial Discipline, 111 Nev. 1459, 908 P.2d 219 (1995) (Whitehead V,) declaring the administrative order and intended termination of the Whitehead panel illegal and void. Whitehead V fully explains the actions of the three justices which forced the issuance of the latter opinion.
On December 20, 1995, Chief Justice Steffen submitted a letter to Governor Miller requesting that he appoint replacement judges for District Judge Addeliar Guy, who was retiring, and Sr. Justice Zenoff, who had family illnesses and had requested that he be replaced on the Whitehead panel. See Exhibit A.
On December 21, 1995, Attorney General Frankie Sue Del Papa filed an original writ petition with the Nevada Supreme Court naming Whitehead court justices Steffen, Springer and Zenoff as respondents, along with the special master appointed in the Whitehead case. The dissenting justice in the Whitehead case was not named, nor, of course, were the two disqualified justices, Rose and Young. As elucidated in the body of this opinion, the purpose of the attorney general's writ petition in Case No. 27847 was to accomplish an overruling of certain final rulings in Case No. 24598 (the Whitehead case) through means of the dissenting Justice Shearing and the disqualified Justices Rose and Young.
After the attorney general filed her petition in Case No. 27847, and for a period of eight days, the governor, who has invariably and routinely issued commissions to substitute judges as requested by the chief justice with dispatch, had taken no action on Chief Justice Steffen's request for the two replacement judges on the Whitehead panel. We soon learned why after receiving a copy of a filed "Order" signed by Justices Shearing, Rose and Young purporting to require a majority of the elected members of this court to approve in writing any assignment of other judges to sit on any Supreme Court cases, including, specifically, the signing of any request to the governor for issuance of special commissions to any senior or retired district court judges to sit on our court. See Exhibit B. This "Order" was an obvious device for preventing the naming of additional judges to serve on the Whitehead panel.
Due to the continuing lack of response from the governor concerning the December 20, 1995 letter requesting his appointment of the substitute jurists, Chief Justice Steffen again wrote the governor on January 10, 1996, asking that he honor the request of the former letter. See Exhibit C. Thereafter, on January 12, 1996, the governor responded by letter declining to appoint substitute judges without a request by a majority of the elected members of the court as specified in the "Order" issued by Justices Shearing, Rose and Young on December 28, 1995. See Exhibit D. The governor's letter of January 12 prompted a request for reconsideration to the governor dated January 16, 1996, signed by Chief Justice Steffen and Justice Springer. See Exhibit E. The governor again denied the request by letter dated January 29, 1996. See Exhibit F.
After disabling the Whitehead court, the dissenting Justice Shearing, and the two disqualified justices Rose and Young, then issued an opinion in Case No. 27847 purporting to declare certain final rulings of the Whitehead court in Case No. 24598 illegal and void. It also issued a writ of prohibition against the Whitehead panel of the Nevada Supreme Court purporting to prevent the Whitehead court from continuing with an investigation of serious contempts of this court by the special master.
At this point, the dissenting justice and the two disqualified justices, each of whom had incentives for attempting to overrule final decisions in the Whitehead case, must have concluded that they had achieved "checkmate." Indeed, if honor and respect for the rule of law and judicial ethics would allow, we simply would have permitted the three justices to bring this unfortunate matter to a dishonorable close in the hope that time might heal the gangrenous wounds to Nevada's judicial system.
Another complication surfaced in this tortured case when Senior Justice Zenoff, who is still a member of the Whitehead court, but who has, as noted above, asked to be relieved of further duty in the Whitehead case, declined *495 to participate further in the case. We, of course, have no alternative other than to respect his position.
The distillate of the above recitals is that there are two functioning members of the Whitehead court remaining, the Whitehead case has not been finalized, and the dissenting justice, the two disqualified justices, and the governor have combined to prevent the appointment of substitute judges on the Whitehead court. Moreover, as discussed above, the attorney general, who was also strongly implicated as one of the subjects of the special master's investigation, has combined with the dissenting justice and two disqualified justices in Case No. 24598 in order to effectuate reversals of final rulings in Whitehead through what purports to be a separate writ proceeding in Case No. 27847. To the credit of our sister jurisdictions throughout this nation, we have been unable to find any historical parallel to what has occurred here in any other jurisdiction.
The above recitals will hopefully explain the necessity and bases for this Supplemental Opinion in Case No. 24598. We will now turn to the authority for issuing this opinion.

The Rule of Necessity
Given the unique circumstances of this case, it will be seen that the Rule of Necessity, generally applied to allow disqualified judges to hear, by necessity, the very cases in which they are disqualified, applies equally to this case by compelling analogy. In Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821), Chief Justice Marshall wrote that a court
must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by, because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid; but we cannot avoid them.
Id. at 404 (emphasis added). As observed by the United States Supreme Court in commenting on the quoted segment from Cohens, Chief Justice Marshall's exposition "could well have been the explanation of the Rule of Necessity." United States v. Will, 449 U.S. 200, 216 n. 19, 101 S.Ct. 471, 481 n. 19, 66 L.Ed.2d 392 (1980).
In State ex rel. Brown v. Dietrick, 191 W.Va. 169, 444 S.E.2d 47 (1994), the court expounded on the Rule of Necessity as follows:
The rule of necessity is an exception to the disqualification of a judge. It allows a judge who is otherwise disqualified to handle the case to preside if there is no provision that allows another judge to hear the matter. This rule of necessity is summarized in 46 Am.Jur.2d Judges  89 (1969):
The majority view is that the rule of disqualification must yield to the demands of necessity, and a judge or an officer exercising judicial functions may act in a proceeding wherein he is disqualified by interest, relationship, or the like, if his jurisdiction is exclusive and there is no legal provision for calling in a substitute, so that his refusal to act would destroy the only tribunal in which relief could be had and thus prevent a determination of the proceeding.

Id. 444 S.E.2d at 55 (emphasis added). Continuing, the Dietrick court declared that:
The rule of necessity is an exception to the general rule precluding a disqualified judge from hearing a matter. Therefore, it is strictly construed and applied only when there is no other person having jurisdiction to handle the matter that can be brought in to hear it, as stated in 46 Am. Jur.2d Judges  90 (1969):
The application of the rule permitting a disqualified judge to act where no other judge is available can be justified only by strict and imperious necessity, since the rule is an exception to the greater rule of disqualification resting on sound public policy. Under the doctrine, a disqualified judge may sit where no decision is possible if he does not sit, as in the case of an appellate court where *496 there is no method provided by constitution or statute to have another person sit as judge of the court if a member is disqualified.

Id. (emphasis added).
In the instant case, the Rule of Necessity has compelling application not because of the need to have disqualified judges sit in order to enable the court to fulfill its constitutional obligation to decide a case over which it has jurisdiction, but because the disqualified justices have successfully intervened to frustrate the constitutional provision for the appointment of judges necessary to maintain a full complement of the court. In short, the disqualified justices have improperly exercised raw political power in an attempt to render the Whitehead court impotent, and place the capacity of the court to act in an indefinite state of limbo. We therefore hearken back to the words of Chief Justice Marshall stating that "we have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution." If we were to allow the jurisdiction of the Whitehead court to evaporate without bringing the case and controversy before it to a proper and just closure, we would be engaging in an act of treason to the Nevada Constitution foisted upon us by a combination fueled by the unlawful interference of the two disqualified justices and the dissenting justice. Knowing that they have no ethical right to participate in determining who the successor judges should be in the Whitehead case, the two disqualified justices and the dissenting justice simply have manipulated the constitutional process for substituting and appointing judges into a presently effective veto power which they control.
By reason of a necessity artificially and improperly created entirely by the disqualified justices and the dissenting justice, it is clear that the underlying purpose for the Rule of Necessity virtually demands that this two-justice opinion be issued as at least a first step in recapturing the rightful capacity and authority of the Whitehead panel. Despite the attempts by the three justices to usurp the rightful jurisdiction of the Whitehead court through the issuance of an invalid opinion in Case No. 27847, the jurisdiction remains with the justices who lawfully sit on the Whitehead court. The responsibility thus continues with the lawful members of the Whitehead panel to see that the constitutional obligation to exercise their jurisdiction is not undermined or rendered impotent. A two-justice opinion has become an absolute necessity because the three justices have taken measures that have been thus far effective in erecting a barrier between the Whitehead court and the constitutional provision providing access to the governor for the appointment of substitute judges. The governor, having elected to recognize the irregular "Order" of the dissenting justice and the two disqualified justices, will apparently continue to cooperate with the three justices who are bent on preventing the Whitehead court from exercising its constitutional jurisdiction.
In summary, the actions of the dissenting justice and the two disqualified justices have created a compelling need for invoking the Rule of Necessity as lawful authority for the issuance of this two-justice Supplemental Opinion.

Inherent Powers of the Court
In State ex rel Andrews v. Superior Court, 39 Ariz. 242, 5 P.2d 192 (1931), the Arizona Supreme Court cogently addressed the subject of the inherent powers of courts as follows:
The difference between the jurisdiction of courts and their inherent powers is an important one. Jurisdiction in governments like ours is conferred by the provisions of the Constitution and statutes enacted in pursuance thereof. That, however, is not true with respect to the inherent powers. These inherent powers may be defined as such powers as are necessary to the ordinary and efficient exercise of jurisdiction. These powers do not depend upon constitutional grant or in any sense upon the legislative will, and are undefined and probably undefinable as to their exact extent. For instance, the power to maintain order; to secure the attendance of witnesses; to enforce process; the arrangement for a proper place and conveniences for the meeting *497 of the courtÔÇöall these powers must in-here in every court, or the purpose of its creation fails, and such being the case, they need not be given expressly by the Constitution or statute, and cannot be taken away by the latter. There is, however, one important and indeed vital limitation on these powers. They must be such as are necessary for the ordinary and efficient exercise of jurisdiction, and therefore exist only when the jurisdiction to maintain which they are necessary is first established.

Id. 5 P.2d at 194-95 (citations omitted).
Ordinarily, NRS 2.140, a perfectly constitutional statute, would preclude the issuance of a two-justice opinion.[3] However, given the circumstances now existing in the instant case, it is apparent that the referenced statute must give way to the inherent power of this court to take whatever measures are necessary to the "ordinary and efficient" exercise of its jurisdiction. As discussed above, the dissenting justice and the two disqualified justices have, with a cooperating governor, forestalled the exercise of constitutional jurisdiction of the Nevada Supreme Court sitting on the Whitehead case.
The constitutional jurisdiction of the Whitehead court is unchallenged, and derives from Art. 6,  4 of the Nevada Constitution.[4] District Court Judge Jerry Carr Whitehead invoked the original jurisdiction of the Nevada Supreme Court by filing an original writ petition in this court pursuant to Rule 40(7) of the Administrative and Procedural Rules for the Nevada Commission on Judicial Discipline which provides that "[r]eview of interlocutory orders of the commission, which are considered either by the prosecuting officer or the respondent judge to be without or in excess of jurisdiction, may be sought by way of petition for an appropriate extraordinary writ." As detailed above, the supreme court properly accepted jurisdiction of respondent judge Whitehead's petition; and that jurisdiction remains the basis for the Whitehead panel's continuing obligation to finalize the case before it.
If the Nevada Supreme Court, Whitehead panel, were to abandon its constitutional obligation to exercise its jurisdiction to achieve final closure of the case and controversy before it, the court would deprive Nevada of its constitutional right to a functioning judicial branch of government. Moreover, we would equally deprive the litigants in the Whitehead case of the only forum having the jurisdiction to decide the controversy and provide the relief to which the litigants are entitled. Therefore, in the instant case, the statute requiring the concurrence of three justices must yield to the inherent power of this court to preserve its capacity to continue the exercise of its constitutionally-based jurisdiction in the ongoing Whitehead case.
The need for invoking the inherent powers of the court exists only by reason of the actions of the three justices and a cooperating governor dedicated to the demise of the Whitehead court at any and all cost. It is with the greatest and most deliberate reluctance that we resort to this extreme measure in the face of this bizarre, and entirely unique situation. However, we appear to be left with no other honorable alternatives.

II. PROCEDURAL BACKGROUND

On December 21, 1995, Attorney General Frankie Sue Del Papa, petitioner in Case No. 27847, filed a petition in the Nevada Supreme Court seeking issuance of a writ of prohibition or in the alternative, a writ of mandamus, against three of the four remaining members of the constitutional panel of this court in Case No. 24598,[5] to wit: Chief Justice *498 Thomas L. Steffen, Justice Charles E. Springer, and Senior Justice David Zenoff, as well as the Special Master (erroneously denominated Special Investigator) Herbert F. Ahlswede, duly appointed by the court in Case No. 24598. The petition sought to prohibit or mandate that the named respondents "cease all action in Supreme Court Case No. 24598 and in particular all action in furtherance of the unlawful and unconstitutional investigation directed against the Petitioner and numerous unnamed individuals identified by Respondent Herbert F. Ahlswede, Special Master of the `Whitehead Court,'. . . appointed by Respondent Justices on September 1, 1995."
The attorney general, who was removed as counsel for the Nevada Commission on Judicial Discipline (the Commission) during the course of the proceedings in Case No. 24598, has sought to interfere with the jurisdiction, orders and judgments of the constitutional panel of this court in Case No. 24598 by means of the referenced petition in Case No. 27847.
Despite petitioner's assertion that "[t]his Petition does not place before the Court any substantive issue in Case No. 24598 ... [and that] [i]ndeed all substantive issues in Case 24598 have long since been decided[,]" it will be seen that petitioner's entire thrust for relief is against rulings of the Whitehead court in Case No. 24598. Moreover, petitioner has beckoned for relief from two justices, Cliff Young and Robert Rose, who were expressly disqualified in Case No. 24598, and who, with the lone dissenting justice in the Whitehead case,[6] have concluded that they can assume control over the rulings of the Whitehead court and overrule them. Additionally, the three justices vainly attempted to name two additional judges to sit on Case No. 27847, in order to diffuse the effect of having two disqualified justices unlawfully sitting as a majority in granting the writ sought by the attorney general. The combination of the petitioner and the three justices has thus sought to interfere with and frustrate the lawful, constitutional jurisdiction of the Whitehead court, its rulings and judgments, and the fundamental respect for law which any tribunal must have in order to maintain public respect for the judicial branch of government. As far as we have been able to ascertain, the action of the three justices is without precedent in the annals of American jurisprudence.
In the course of its rulings, the Whitehead court determined that the Honorable Jerry Carr Whitehead,[7] petitioner in Case No. 24598, was entitled to confidentiality in this court in order to preserve the pre-probable cause confidentiality of the proceedings before the Commission as mandated by Article 6,  21 of the Nevada Constitution. At least five of the six justices and judges who sat on the Whitehead court agreed that confidentiality was necessary in this court's resolution of Judge Whitehead's petition.[8] These justices included then-Chief Justice Robert Rose, prior to his disqualification, who now has joined in the decision purporting to overrule his own position in Case No. 24598. See Exhibit G. Moreover, the Nevada District Judges Association and the Board of Governors of *499 the Nevada State Bar agreed that the pre-probable cause petition filed by Judge White-head had to be entertained by our court in confidence as mandated by the Nevada Constitution.[9] The mentioned organization of district court judges also strongly urged then-Chief Justice Robert Rose to see that measures were taken to determine the source of the unlawful breaches of the Whitehead court's orders of confidentiality. However, nothing was done.
On April 25, 1996, the three justices issued an opinion in Case No. 27847 purporting to grant the petition filed by the Attorney General, Frankie Sue Del Papa. The writ of prohibition issued by the three justices primarily declared that the Whitehead court's final determinations that the Whitehead petition had to be entertained before our court in confidence were "invalid and unenforceable," and that the special master was appointed by the Whitehead court without constitutional or legislative authority. It also purported to direct the respondents in Case No. 27847 to terminate their inquiry into contempts of this court and to "cease and desist from any further action in the investigation launched in Supreme Court Case No. 24598 by the appointment of a special master to determine the source of news leaks and the reason for this court's lost prestige."
In order to protect the constitutional jurisdiction and rulings of the Whitehead court, and to proceed with the lawful investigation by the special master into a series of contempts of this court which include serious violations of due process, the breaches of orders of confidentiality issued by the Whitehead court, and defamation of the court, it is necessary to issue this opinion declaring the opinion issued by the three justices on April 25, 1996, void and of no legal force or effect, and to dismiss Case No. 27847 with prejudice. It is also necessary to permanently enjoin the three justices from any further attempts to unlawfully interfere in any way with the decisions and orders of the Whitehead court.[10]

III. DISCUSSION

A. Why it is necessary to declare the opinion and writ issued in Case No. 27847 void and illegal?

(1) The petition and opinion and writ issued pursuant thereto constituted invalid attempts to require judges to recuse or disqualify themselves and thereby accomplish the reversal of the rulings of the Whitehead court.

Petitioner Del Papa, by the extraordinary means of filing a petition against the duly-constituted majority of the Whitehead court, sought to force the disqualification of those justices in order to have the justices who were disqualified in the Whitehead case join with the lone dissenting justice in Whitehead to nullify critical rulings issued by the constitutionally constituted Whitehead court. We need only mention here that despite Del Papa's protestations to the contrary, the relief sought and purportedly obtained in Case No. 27847 applies strictly to the Whitehead case, that is, Case No. 24598. It is patently clear that Case No. 27847 was filed under a new docket number in an attempt to avoid such doctrines as law of the case, res judicata, and collateral estoppel, and the problem of having two disqualified justices in Case No. 24598 participate in interfering with and overruling critical aspects of the case in which they are disqualified. In every respect, however, Case No. 27847 represents an improper act of judicial manipulation calculated to oust the court of jurisdiction in Case No. 24598 in order to overrule judgments in that case that are not well received by the attorney general or the three justices.
In the first effort to infuse an appearance of legitimacy to their position, the three justices vainly sought to obtain two additional *500 district court judges to sit with them on Case No. 27847 by representing to the governor that Justices Steffen and Springer had disqualified themselves in the new case. After Justice Springer disabused the governor of that representation in writing, the three justices then simply, without any formal, adversarial proceeding, declared Justices Steffen and Springer, as named respondents in Case No. 27847, disqualified. Under normal circumstances, of course, their conclusion would be correct. But since they were attempting to oust Chief Justice Steffen and Justice Springer of their lawful jurisdiction in Case No. 24598 by means of a new case number, their attempt was without question unlawful and invalid.
We first observe that Petitioner Del Papa, an active participant in Case No. 24598 prior to her removal, named as respondents only those members of the Whitehead court who had ruled contrary to the strident positions which she took in that case. Not named, noticed, or allowed to participate, were Petitioner Jerry Carr Whitehead, the Discipline Commission and several amici. Former Judge Whitehead, of course, stands to lose the most from the actions of Del Papa and the three justices as he expended substantial legal resources in order to achieve at least a form of justice in the Whitehead case. Justice Shearing, the lone dissenter in the Whitehead case, was, of course, not named as a respondent.
The Arizona Supreme Court, in In re Ronwin, 139 Ariz. 576, 680 P.2d 107, cert. denied, 464 U.S. 977, 104 S.Ct. 413, 78 L.Ed.2d 351 (1983), observed, in agreement with a ruling by the Ninth Circuit, that:
[T]he mere fact that a judge has been sued by reason of his rulings in a case does not require recusal. Nor can the fact that all judges in the court have been sued require recusal. To honor such a technique would be to put the weapon of disqualification in the hands of the most unscrupulous.
Id. 680 P.2d at 117.
Other numerous cases, only certain of which we will cite here, have made it abundantly clear that Petitioner Del Papa's attempt to oust the Whitehead majority of their jurisdiction in Case No. 24598 and supplant them with the three justices is unlawful. In Commonwealth v. Leventhal, 364 Mass. 718, 307 N.E.2d 839 (1974), the court held that:
[A] party cannot disqualify a judge to sit in his case by bringing an action against him after the principal suit is commenced. Nor is a judge disqualified because he is made a formal party as a method of seeking review of his rulings; to be disqualifying, the bias and prejudice must rise from an extrajudicial source and not from something learned from participation in the case.
Id. 307 N.E.2d at 841 (citations omitted). Again, it has been held that "[a]dverse rulings against the defendant in the same or a prior judicial proceeding do not render the judge biased. In addition, a judge is not disqualified merely because a litigant sues or threatens suit." In re Hipp, Inc., 5 F.3d 109, 116 (5th Cir.1993) (footnote omitted).
In United States v. Studley, 783 F.2d 934, 939 (9th Cir.1986), the court held that "[t]he alleged prejudice must result from an extrajudicial source; a judge's prior adverse ruling is not sufficient cause for recusal." The court further held that "[a] judge is not disqualified by a litigant's suit or threatened suit against him or by a litigant's intemperate and scurrilous attacks." Id. at 940 (citation omitted); see also United States v. Grismore, 564 F.2d 929, 933 (10th Cir.1977) ("A judge is not disqualified merely because a litigant sues or threatens to sue him"), cert. denied, 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); Andersen v. Roszkowski, 681 F.Supp. 1284, 1289 (N.D.Ill.1988) (where apparent that plaintiffs had no legitimate basis for suing the judge and did so because of judge's prior dismissal of plaintiff's complaint, there is no basis for disqualification, which would permit plaintiffs to "manipulate the identity of the decisionmaker and to engage in `judge-shopping'"), aff'd, 894 F.2d 1338 (7th Cir.1990).
In the case of Jones v. City of Buffalo, 867 F.Supp. 1155 (W.D.N.Y.1994), the court stated:
[I]t is apparent that Jones employs a litigation tactic by which he moves for disqualification *501 or recusal of any judge who has or Jones believes will rule against him. . . .
. . . .
In my view, this tactic of suing federal judges and then seeking their disqualification is nothing more than a tactic to delay and frustrate the orderly administration of justice. Judges should not be held hostage to this kind of tactic and automatically recuse themselves simply because they or their fellow judges on the court are named defendants in a truly meritless lawsuit.
Id. at 1162-63 (quoting with approval Jones v. City of Buffalo, No. 89-1088 (W.D.N.Y. March 20, 1990) (order denying motion to recuse)).
The Supreme Court of Kansas, in response to an attempt to disqualify the members of that court in State v. Rome, 235 Kan. 642, 685 P.2d 290, 296 (1984), held that "[w]e are charged [by Kansas law] with supervision of the practice of law. To permit the filing of a suit against members of this court to disqualify them from discharging that statutory duty would nullify it and permit manipulation of the court." Finally, then-Justice Rehnquist, in denying a motion to disqualify him for, inter alia, having made public statements concerning principles of law that were not favorable to the movants' position, stated that "[t]hose federal courts of appeals that have considered the matter have unanimously concluded that a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." Laird v. Tatum, 409 U.S. 824, 837, 93 S.Ct. 7, 15, 34 L.Ed.2d 50 (Rehnquist, J. 1972) (citations omitted).
The distillate of both the law and facts involving the present attempt to disqualify the majority of the Whitehead court and to enter an opinion adverse to the rulings of the Whitehead panel, without its participation, is that the petition and action by the three justices are void as an unlawful attempt to manipulate the Whitehead court out of its rightful jurisdiction to act. Petitioner's remedy, while acting as counsel for the Commission, was to petition the Whitehead court for rehearing in an effort to cause the court to alter its position. As petitioner Del Papa stated in her writ petition, the issues raised by her under Case No. 27847 have long since been settled in a legitimate case and controversy. These issues cannot now be overruled through the means employed by the attorney general and the three justices.
(2) Justices who recused themselves in the Whitehead case may not now reverse their disqualification or recusal by ruling on the petition filed as Case No. 27847 and thereby overrule decisions of the case and controversy (Case No. 24598) in which they were disqualified to act.

Every federal appellate court that has ruled on the problem of a recused judge attempting to reenter a case and participate in any form of adjudication or matter other than that of a strictly ministerial nature, such as transferring a case to another judge, has ruled any decision or order of such judge to be void. In the case of Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813, 827-28, 106 S.Ct. 1580, 1588, 89 L.Ed.2d 823 (1986), the court stated that "we are aware of no case, and none has been called to our attention, permitting a court's decision to stand when a disqualified judge casts the deciding vote." Here, of course, we have two disqualified justices casting the deciding votes without even the slightest attempt to cite authority supporting their right to participate in an original petition calculated to overrule critical aspects of the very case in which they are both disqualified to sit.
In the case of Moody v. Simmons, 858 F.2d 137, 143 (3d Cir.1988), cert. denied, 489 U.S. 1078, 109 S.Ct. 1529, 103 L.Ed.2d 835 (1989), the court held that "[o]nce a judge has disqualified himself, he or she may enter no further orders in the case." Indeed, the Moody court even vacated an order that was not challenged by either party in the case. The Fourth Circuit, in Arnold v. Eastern Air Lines, Inc., 712 F.2d 899 (4th Cir.1983), cert. denied, 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984), held that:
Patently a judge who is disqualified from acting must not be able to affect the determination of any cause from which he is barred.
. . . .

*502 However, should he, or any other regular active member of the court, recuse or disqualify himself at any time, he is out of service insofar as that particular case is concerned. To disqualify means to debar legally. That is synonymous with lack of legal capacity, i.e., with inability to serve.
Id. at 904 (citation omitted) (footnote omitted). The Arnold court, with particular application to what has transpired with the two disqualified justices in the instant matter, also held that:
[T]he logic is badly frayed inasmuch as it is assumed that a recused judge would vote on whether a case should be heard or reheard en banc even though disqualified from voting on the merits. The Fourth Circuit has simply not operated in that fashion, and we do not perceive how a disqualified judge could do so without infringing the rule that he should take no action which would possibly affect the outcome of a case. To count as a vote his non-vote might well be decisive as to whether the case would be reheard.
Id. at 905 (footnote omitted).
In an earlier effort to interfere with the course of Case No. 24598, the two disqualified justices, in alliance with the dissenting justice, "adopted" a rule that purports to prevent the chief justice from requesting replacements on a given case from the governor without the prior approval of a majority of the elected members of the court. This was done in order to entice the governor not to appoint the requested replacements on the Whitehead court that were necessitated by the retirement of the district judge appointed by then-Chief Justice Rose, and the desired replacement of a senior justice whose family health difficulties caused him to seek relief from his assignment in the Whitehead case (and who now simply refuses to participate further in the Whitehead case). This represented but another unlawful and deliberate attempt to affect the court's rulings and capacity to rule in the Whitehead case.
Stringer v. United States, 233 F.2d 947, 948 (9th Cir.1956), held that after disqualification, judges are confined to performing only the "mechanical duties of transferring the case to another judge or other essential ministerial duties short of adjudication." See also El Fenix de Puerto Rico v. The M/Y Johanny, 36 F.3d 136, 142 (1st Cir.1994) (general rule that recused judge "should take no further action except to enable administrative reassignment of the case"; therefore, it was error for recused judge to set aside final judgment simultaneously with recusal order); Moody, 858 F.2d at 143-44 (if a judge adjudicates any issue after his recusal, that order is void); McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1260-61 (5th Cir.1983) (disqualification cannot be waived; disqualified chief judge prohibited from selecting judge who would handle case in which chief judge is disqualified because of statutory law and the creation of suspicion that chief judge would select successor whose views were consistent with his); Gubler v. Commission on Judicial Performance, 37 Cal.3d 27, 207 Cal.Rptr. 171, 187-88, 688 P.2d 551, 567-68 (1984) ("Since petitioner was disqualified under [California law] from hearing the fee-setting issue, it was highly improper for him to give unsolicited advice to another judicial officer on how to decide it"); Bolt v. Smith, 594 So.2d 864, 864 (Fla.Ct.App.1992) ("Florida case law is well settled that once a trial judge has recused himself, further orders of the recused judge are void and have no effect"); State v. Evans, 187 Ga.App. 649, 371 S.E.2d 432, 433 (1988) ("A disqualified judge can take no judicial action in the case and any attempt at such action is a mere nullity"); Ferguson v. Pony Express Courier Corp., 898 S.W.2d 128, 130 (Mo.Ct.App.1995) ("It is true that a judge who disqualifies himself or who has been disqualified by one of the parties has no further right to hear the case"); State ex rel. Johnson v. Mehan, 731 S.W.2d 887, 888 (Mo.Ct.App.1987) ("Once a change of judge has been entered and the case transferred to another judge the disqualified judge has no further authority in the case and any orders made after the disqualification are void"); Byrd v. Brown, 613 S.W.2d 695, 699-700 (Mo.Ct.App.1981) ("Judge Moore's disqualification was effective upon the docket entry and the case was transferred to Judge Northern. Judge Moore had no further authority in the case. Therefore, the orders made after the initial docket entry of disqualification ... were *503 void") (footnotes omitted); Pueblo of Laguna v. Cillessen & Son, Inc., 101 N.M. 341, 682 P.2d 197, 199 (1984) ("Since the district court was properly disqualified, it had power only to perform mere formal acts subsequent to the disqualification. After the affidavit of disqualification was filed, the judge had no jurisdiction to act in matters involving the exercise of his discretion. Its subsequent consolidation order was therefore without legal effect") (citations omitted); State v. Nossaman, 63 Or.App. 789, 666 P.2d 1351, 1355 (1983) ("A judgment entered by a judge who has been disqualified in the manner prescribed in the statute is void"); and McElwee v. McElwee, 911 S.W.2d 182, 186 (Tex.Ct. App.1995) ("If a judge is disqualified under the Texas Constitution, he is without jurisdiction to hear the case, and therefore, any judgment he renders is void and a nullity"). The authorities are uniform, indeed it is black letter law that a disqualified judge may not issue any orders or rulings other than of a "housekeeping" nature in a case in which he or she is disqualified. The two disqualified justices in the instant case cannot be allowed to avoid the effect of their disqualification and the law by simply suggesting that they are not sitting on or otherwise affecting Case No. 24598. Indeed, the entire thrust of their opinion and writ issued on April 25, 1996 is directed to the final decisions of the Whitehead case in which they are disqualified.
It was disingenuous to the extreme, in an order issued by the three justices on March 15, 1996 in Case No. 27847, to state that "[i]t is obvious that this case is not the same case as Whitehead v. Comm'n on Jud. Discipline, Docket No. 24598. Both the parties and the issues in the two cases are different." This blatant misrepresentation is readily refuted by simply comparing the two cases. The thrust of Case No. 27847 and the ruling of the three justices is that the orders of confidentiality and the appointment of the special master in the Whitehead case were invalid. These are the identical issues that were resolved by final judgment in the Whitehead case. Moreover, it is equally disingenuous to state that the parties are "different" simply because the attorney general filed a collateral writ petition naming the majority of the Whitehead court as respondents. If this type of jurisprudence were recognized by any court as valid, it would invite the same outrageous maneuvering that has occurred in the instant case, and finality could never be safely reached.
As we will later note, the two disqualified justices have displayed such disregard for the law and judicial norms that they have even gone to the length of issuing a writ that is absolutely unavailable as a remedy against the constitutional panel of the same court. The only court having the power to issue such a writ of prohibition is the United States Supreme Court.

(3) The two disqualified justices are also disabled from acting in Case No. 24598 or Case No. 27847 because of the federal and Nevada requirements of due process.

Nothing is more fundamental to our law than the right of all litigants to have a fair trial or hearing before a fair and impartial tribunal. No objective person could view the "court" issuing the opinion and writ in Case No. 27847 as either fair or impartial. First, all three justices "deciding" the petition in Case No. 27847 had previously attempted to rescind the appointment of the special master and terminate the Whitehead case in previous administrative conferences (virtually the same remedy sought by the petition in Case No. 27847). See Whitehead v. Nevada Comm'n on Jud. Discipline, 111 Nev. 1459, 908 P.2d 219 (1995). Second, two disqualified justices in Case No. 24598 have embraced the pretense that Case No. 27847 is different than Case No. 24598 in order to overrule major holdings of the case and controversy in which they are disqualified to act. Indeed, the "court" in Case No. 27847 purports to issue a writ of prohibition against the constitutional Nevada Supreme Court in Case No. 24598, directing the court in the latter case to cease and desist from any further investigative action commenced through its lawfully appointed special master. Third, the disqualified justices are joined by the lone dissenter in Case No. 24598.[11] Fourth, it appears *504 from what has thus far been produced by the special master's investigation and other factors that are observable and from which strong inferences may be drawn, that all three justices are possibly implicated in one aspect or another of the violation of law that occurred in Case No. 24598. Other possible participants in the breaches of the Whitehead court's orders, and the denials of due process that most likely flowed therefrom, are the attorney general and one or more members of her staff or special deputies. It will be noted that we have thus far named all of the major actors in the production of the opinion and writ issued on April 25, 1996 under Case No. 27847. All appear to have major reasons for attempting to prevent the constitutionally empaneled Whitehead court from fulfilling its obligation to see that its lawful orders, as the Supreme Court of the State of Nevada, were properly obeyed and enforced. It is simply a major understatement to note that due process had no place in the opinion and order issuing from Case No. 27847.
Indeed, as previously noted, Judge Jerry Carr Whitehead still has every reason to expect that the rulings of the Whitehead court giving him the benefit of certain rights, including the granting of his motion for an investigation, will be carried out to an honorable conclusion without interference from those who are willing to use and abuse their powers to defeat the Whitehead court's jurisdiction. Judge Whitehead was not even noticed or given the opportunity to be heard in this latest attempt to do violence to the law and constitution of this state. Nor was the Commission given notice or the opportunity to be heard. Both are affected in one way or another by the opinion and writ issued in Case No. 27847.
One of the most basic requirements of due process is "[a] fair trial in a fair tribunal." In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). This, of course, applies equally to hearings and appeals before appellate tribunals. Revisiting the seminal case on the subject, Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), a member of the Alabama Supreme Court participated in a decision that announced a rule of law that was favorable to that justice's action in an otherwise unrelated suit. Indeed, the justice was the swing vote and the author of the opinion that established law that would be beneficial to the justice in two unrelated actions against insurance companies. The United States Supreme Court vacated the judgment of the Supreme Court of Alabama, holding that Justice Embry's participation in the decision violated appellant's right to due process. In so ruling, the Court declared that it was unnecessary to determine whether Justice Embry was in fact influenced in his decision but only whether sitting on the case would present a "`possible temptation to the average ... judge to ... lead him to not to hold the balance nice, clear and true.'" Id. at 825, 106 S.Ct. at 1587 (quoting Tumey v. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927)).
The Supreme Court has also ruled that "`justice must satisfy the appearance of justice.'" Murchison, 349 U.S. at 136, 75 S.Ct. at 625 (quoting Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954)). Moreover, the Due Process Clause may sometimes even disqualify judges who have no actual bias and "`who would do their very best to weigh the scales of justice equally between contending parties.'" Lavoie, 475 U.S. at 825, 106 S.Ct. at 1587 (quoting Murchison, 349 U.S. at 136, 75 S.Ct. at 625), see also Del Vecchio v. Illinois Dep't of Corrections, 31 F.3d 1363, 1371 (7th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1404, 131 L.Ed.2d 290 (1995). Thus, "when a judge is faced with circumstances that present `some [actual] incentive to find one way or the other' or `a real possibility of bias' a court need not examine whether the judge actually was biased. Absent the incentive for bias, however, disqualification is not required despite bad appearance." Del Vecchio, 31 *505 F.3d at 1372 (quoting Howell v. Jones, 516 F.2d 53, 57-58 (5th Cir.1975)).[12]
It is painfully clear that the opinion and writ issued by the three justices on April 25, 1996 in Case No. 27847 was entertained and entered without due process of law. It is therefore void.

(4) The three justices do not have the jurisdiction to enter prohibition against the same court on which they sit.

The attorney general has sought writ relief that is not available to her in either Case No. 27847 or Case No. 24598, and the three justices were without jurisdiction to issue a writ of prohibition against a constitutional panel of the same court on which they sit.
The Whitehead panel of this court was, and is, in every respect the Supreme Court of the State of Nevada. The Whitehead court presently consists of a majority (three) of the elected members of the Nevada Supreme Court, Chief Justice Steffen, Justice Springer and Justice Shearing. Senior Justice Zenoff was appointed to sit on the Whitehead case in the place of then-Chief Justice Rose by Justice Steffen in accordance with the Nevada Constitution, Art. 6,  19[13] and Supreme Court Rule 10.[14] Justice Zenoff has had all the judicial power and authority of a regularly elected member of this court while sitting on assignment with the court. See infra note 14. The other member of the Whitehead court during most of its history and until ill health and retirement from judicial office forced his resignation from the court, was Judge Addeliar Guy, Judge of the Eighth Judicial District Court, who was appointed by the governor as recommended by then-Chief Justice Rose pursuant to art. 6,  4 of the Nevada Constitution.[15] He also possessed all the judicial power and authority *506 of a regularly elected member of this court while performing his assignment in the Whitehead case. See supra note 14. Indeed, Justices Steffen and Springer, Sr. Justice Zenoff and District Judge Addeliar Guy, along with the dissenting justice, Miriam Shearing, all participated in the final adjudications that the three justices now seek to nullify in Case No. 27847.
The California Supreme Court held that:
A duly assigned judge pro tempore generally has the same power and authority (pro hac vice) as a regular judge of the court to which he or she is assigned. Logically, if one judge assigned to the Supreme Court to replace a disqualified Supreme Court justice has the power and authority of a Supreme Court justice in the assigned case, including the power to cast the decisive vote, it follows that four or more duly assigned judges have the authority to render a valid decision or judgment in a case before the Supreme Court.
Mosk v. Superior Court, 25 Cal.3d 474, 159 Cal.Rptr. 494, 500, 601 P.2d 1030, 1036 (1979) (citations omitted). The exact same principle applies in Nevada only with greater force since the Nevada Constitution, art. 6,  4, directly provides for the replacement of disqualified members of the supreme court. See supra note 15. In every respect, the court in Case No. 24598 was and is, the Nevada Supreme Court.
It is thus seen that we are faced with the prospect of two disqualified justices attempting to form a majority with the lone dissenting justice in the Whitehead case in order to overrule crucial final decisions in Case No. 24598 and to enjoin through prohibition issued in Case No. 27847 the exercise of jurisdiction by the constitutionally constituted Supreme Court of the State of Nevada. This they cannot do.[16]
The remedy of prohibition in the Nevada Supreme Court exists only with respect to actions by inferior tribunals which have acted in excess of their jurisdiction.[17] It should surprise no one that the three justices made no attempt to justify the powers they have sought to exercise in Case No. 27847, since such powers do not exist. We can conceive of no greater source of the destruction and desecration of the judicial power than that which the two disqualified justices seek to assert by inviting and entertaining a writ that would enable them to overrule the holdings of the case and controversy in which they were disqualified to sit. Such a procedure makes a sham of an act of disqualification or recusal, and would eliminate the prospect of finality in the judicial process. *507 Appeals and original proceedings lawfully entertained and acted upon by this court would no longer be imbued with the sound stabilizing protections of res judicata, collateral estoppel and law of the case. Rather than adhering to principles of appellate law that create finality upon final adjudication and denial of rehearing, final judgments of this court would be subject to the form of backdoor proceeding seen here, where disqualified justices could combine with one or more dissenting justices to overrule the finality established within the case and controversy in which they were unqualified to sit. Such a procedure would be intolerable to any court of last resort.
Since the remedy of prohibition (and mandamus) was unavailable to the attorney general, the three justices were powerless to act upon it. They were equally powerless, for reasons previously noted, to join forces with the lone dissenting justice in Case No. 24598 in order to overrule final adjudications in the matter in which they were and are disqualified.

B. Brief response to void order and writ issued by the three justices.

It is unnecessary to comment on the three justices' void "rulings" concerning the issues finally decided in Case No. 24598. We do, however, consider it appropriate to respond to their vilifying views concerning the payment of the special master's fees by Chief Justice Steffen and Justice Springer.
The Order Appointing Special Master was filed on September 1, 1995. The order was issued pursuant to Whitehead v. Nevada Commission on Judicial Discipline, 110 Nev. 874, 890, 878 P.2d 913, 923 (1994), which opinion has long since been final. In the referenced ORDER, the special master, Herbert F. Ahlswede, was to receive compensation at the hourly rate of $145ÔÇöthe same rate of pay the attorney general contracted to pay the special deputy attorney general she employed for the purposes of investigating and prosecuting Judge Jerry Carr Whitehead. The Order of appointment was signed by Chief Justice Steffen, Justice Springer, Sr. Justice Zenoff, and District Judge Addeliar Guy, all of whom were empowered to issue said order in accordance with their jurisdiction as the Supreme Court in Case No. 24598.
On September 6, 1995, the three justices sent a memorandum to Don Mello, Director of the Administrative Office of the Courts, ordering him not to pay the special master unless and until approved by a majority of the court. As soon as Chief Justice Steffen received a copy of the referenced memorandum, he called Mr. Mello and told him that he would receive no vouchers for payment of the special master's services, as the chief justice did not want to place Director Mello in the middle of a controversy in which a majority of the elected members of the court could terminate his employment. It was clear, however, and had been so determined in advance of the special master's appointment, that funds existed within the court's budget with which to appropriately pay the special master.
Neither Chief Justice Steffen nor Justice Springer was disposed to allow the further erosion of the honor of this court by denying the special master payment for services already rendered, and for which payment had been expressly authorized by lawful order of the court. The statement supplied by Special Master Ahlswede dated September 12, 1995, and paid by Justices Steffen and Springer, were for services which the special master had performed in good faith on September 1 and 2, 1995, substantially in advance of the directive of September 6, 1995 by which the three justices sought to deny him payment. The special master's statement totalled $1,450, and Chief Justice Steffen and Justice Springer each paid one half, or $725 each, in order to honor this court's obligation pursuant to the Order of appointment.
The special master performed his services in good faith and with maximum effect. Indeed, the product of his services is now of public record and remains an extremely fruitful foundation for the investigation that virtually cries out for completion in order to preserve the integrity and independence of the judicial branch of government in the State of Nevada. Instead, the very forces that are strongly implicated in the investigation are the same judicial and public officers *508 that are using every artifice imaginable to prevent the investigation from continuing to an honorable conclusion.
Once again, the three justices have sought to convey the impression that the special master was being "privately financed" by Justices Steffen and Springer. This is false. As noted above, the payment to the special master for services already rendered was a matter of maintaining the honor and integrity of this court and its orders. To suggest, as the three justices do, that by "privately financing that investigation, it strongly appears that Justices Steffen and Springer hijacked the awesome power of this court to further their own personal vendettas and not, as they claimed, to discover why the public had lost confidence in the judiciary," is repugnant to all sense of decency and truth.[18] We also note that the three justices again conveniently overlook the fact that the order committing the honor and good offices of the court to the payment of the special master's services was signed by four members of the court, not merely by Justices Steffen and Springer.
This court desires only to see that justice is served and that the investigation into criminal contempts of this court continues to its necessary and honorable conclusion. To suggest, as the three justices do, that the attorney general or the district attorneys over whom she has statutory supervisory powers could have conducted the investigation is highly disingenuous given the fact that the attorney general, rather than enforcing the confidentiality orders of the court in Case No. 24598, was at the forefront in opposing them and in attempting to frustrate any effort to determine the source of the violations of the confidentiality orders of this court. Her efforts continue to this day.
We continue to declare to all who will listen that the Whitehead court performed its constitutional duties with total honor and exactitude. We have no hesitancy in utilizing whatever honest and objective resources may be available in order to bring culpable parties to justice. We strongly believe that our citizens must not be deprived of the honest services of their public officers, judicial and otherwise, and the only way to secure that result is through a thorough, objective investigation. This court commenced with that objective and intends to continue with that objective to the extent that it may do so despite the deliberate interference by powers who desire to maintain their lofty positions of public trust unjeopardized by what an honest investigation may reveal.

IV. CONCLUSION

For the reasons discussed above, we conclude that the opinion and writ of prohibition issued by the three justices on April 25, 1996 in Case No. 27847 are void and of no legal force or effect whatsoever, and we hereby permanently enjoin the two disqualified justices from any further attempts to participate in any form of action or effort to interfere, in any way, with the jurisdiction of the court in Case No. 24598 and its efforts to investigate and appropriately hold accountable, those responsible for the violations of its orders and any deprivation of the right to due process of the litigants in Case No. 24598.

EXHIBIT A

SUPREME COURT OF NEVADA

THOMAS L. STEFFEN, CHIEF JUSTICE

CAPITOL COMPLEX

CARSON CITY, NEVADA 89710

December 20, 1995
The Honorable Robert Miller
Governor
Capitol Building
Carson City, NV 89710
Dear Governor Miller:
As you know, District Judge Addeliar Guy will be retiring soon, and has thus asked to be relieved of further participation in case number 24598 (the Whitehead case). In addition, Sr. Justice Zenoff, who has a terminally ill brother and a son who recently underwent major transplant surgery, has asked that he also be relieved of the stressful demands of this difficult case. We are very grateful to these two jurists for their devoted service under the most difficult of conditions.
*509 Although I am most anxious to bring this unprecedented case to a close, unfortunately, the work of the Whitehead court is not complete. As you probably know, four of the five members of the panel determined, in Whitehead v. Comm'n on Jud. Discipline, 110 Nev. 874, 890, 878 P.2d 913, 923 (1994), that:
A special master shall hereafter be appointed by the court and shall be specially empowered by further and specific order of this court to conduct such investigations as shall be necessary to determine the sources of the unlawful breaches of confidentiality that have occurred in these proceedings and the extent to which they may have impacted Petitioner's due process rights.
Since the Whitehead matter is not yet concluded, I respectfully request that you appoint District Judge John P. Davis of the Fifth Judicial District Court to sit in the place and stead of District Judge Addeliar Guy, and Sr. District Judge Joseph O. McDaniel to sit in the place and stead of Sr. Justice David Zenoff in Case No. 24598. If you find it in order, will you kindly issue an executive order to Judge John P. Davis and to Sr. District Judge Joseph O. McDaniel.
Thank you, and warm regards.
 Very truly yours,
 /s/ Thomas L. Steffen
 THOMAS L. STEFFEN
 Chief Justice
TLS/lr

EXHIBIT B

IN THE SUPREME COURT OF THE STATE OF NEVADA
IN THE MATTER OF THE RECALL TO ACTIVE OR TEMPORARY SERVICE OF ANY RETIRED JUSTICE OR DISTRICT JUDGE, AND OF THE TEMPORARY ASSIGNMENT TO THE SUPREME COURT OF ANY JUSTICE OR JUDGE PRO TEMPORE OR SENIOR JUSTICE OR JUDGE.

ORDER
WHEREAS, Article 6 Section 19 of the Constitution of the State of Nevada recites that the Chief Justice may, subject to such rules as the Supreme Court may adopt, recall to active service any retired justice or judge of the Nevada Court System; and
WHEREAS, Supreme Court Rule 10 delineates the procedure for the recall by the Supreme Court of retired supreme court justices or district judges to active service as senior justices and judges, and the procedure for the temporary assignment of senior justices and judges to service on the Supreme Court; and
WHEREAS, Supreme Court Rule 11 delineates the procedure for the recall by the Supreme Court of retired supreme court justices or district judges to temporary service as justices and judges pro tempore, and the procedure for the temporary assignment of justices and judges pro tempore to service on the Supreme Court; and
WHEREAS, Supreme Court Rule 7 authorizes the Chief Justice, as the administrative head of the Nevada Court System, and the Vice-Chief Justice when acting as Chief Justice, to perform administrative activities not inconsistent with the Court rules, or any decision or order of the majority of the Supreme Court; and
WHEREAS, it appears to a majority of the Supreme Court that the proper and orderly administration of the Nevada Court System requires that the Chief Justice should recall to active or temporary service retired justices and district judges only with the approval of a majority of the Supreme Court; now therefore
IT IS HEREBY ORDERED that no retired supreme court justice or district judge may be recalled either to active service as a senior justice or judge, or to temporary service as a justice or judge pro tempore, without written approval of a majority of the elected members of the Supreme Court;
IT IS HEREBY FURTHER ORDERED that no senior justice or district judge, or justice or judge pro tempore may be assigned *510 to temporary service on the Supreme Court without written approval of a majority of the elected members of the Supreme Court.
IT IS HEREBY FURTHER ORDERED that any request to the Governor of the State of Nevada for issuance of a special commission to a senior district judge or retired district judge assigned to hear and determine any case in the Supreme Court shall be signed by a majority of the elected members of the Supreme Court.
IT IS HEREBY FURTHER ORDERED that any action taken in contravention of this order shall be null and void.
 DATED: December 28, 1995.
 /s/ Young
 YOUNG
 Vice Chief Justice
 /s/ Shearing
 SHEARING
 Justice
 /s/ Rose
 ROSE
 Justice
 cc: Hon. Robert J. Miller, Governor
 Hon. Thomas L. Steffen, Chief Justice
 Hon. Charles E. Springer, Justice

EXHIBIT C

January 10, 1996
Hon. Bob Miller
Governor
Capitol Complex
Carson City, NV 89710
Dear Governor Miller:
By now you must realize the lengths to which certain officials are extending themselves in order to disintegrate the constitutionally constituted court in Case No. 24598. I sincerely hope and trust that you will honor my request to replace Sr. Justice Zenoff and District Judge Addeliar Guy with District Judge John Davis and Sr. District Judge Joseph McDaniel.
I assure you that I have not discussed the merits of this case with either judge, and have in fact only determined from them that they would be willing to sit on the case. I personally do not know Judge Davis, and have had only occasional contact with Sr. Judge McDaniel when we both were on the State-Federal Judicial Council together. I believe him to be a totally honorable and ethical judge. I have also heard nothing that would indicate to the contrary concerning Judge Davis.
Governor, I don't pretend to know all the motives behind the extremely deleterious history of the Whitehead case, but I can personally assure you that the Whitehead panel has served with ethical exactitude and honor. I firmly believe that our citizens are entitled to know the truth regarding that case, and why it has created such terrible damage to the judiciary in general, and this court and certain of its justices in particular. I assure you that I am not driven by a spirit of revenge or vendetta. My only compelling desire is to see, to the extent it is possible, that the court in Case No. 24598 is vindicated and that our citizens can once again have greater reason to believe that the judicial branch of government is deserving of respect in this jurisdiction.
Thank you for your consideration.

Sincerely,

THOMAS L. STEFFEN

EXHIBIT D

STATE OF NEVADA

EXECUTIVE CHAMBER

Capitol Complex

Carson City, Nevada 89710

BOB MILLER

Governor

TELEPHONE

(702) 687-5670

Fax: (702) 687-4486

January 12, 1996
The Honorable Thomas L. Steffen
Nevada Supreme Court Chief Justice
*511
Capitol Complex
Carson City, Nevada 89710
Dear Chief Justice Steffen:
I am in receipt of your letters dated December 20, 1995 and January 10, 1996 wherein you have requested that I appoint District Judge John P. Davis and Sr. District Judge Joseph O. McDaniel in the place and stead of District Judge Addeliar Guy and Sr. Justice David Zenoff, respectively, in the matter of case number 24598.
I appreciate your strong belief in the stance you have taken; however, you must also recognize the legal dilemma with which I am faced. I have not contacted the Attorney General for advice on this matter as it would be legally inappropriate due to her office's involvement in case number 27847.
After considerable research and advice from my in house legal counsel and in light of the Order entered December 28, 1995, I am of the belief that I do not possess the authority to make such an appointment absent a consensus of the elected court's majority.
 Sincerely,
 /s/ Bob Miller
 BOB MILLER
 Governor
BM/cmc

EXHIBIT E

SUPREME COURT OF NEVADA

THOMAS L. STEFFEN, CHIEF JUSTICE

CAPITOL COMPLEX

CARSON CITY, NEVADA 89710

January 16, 1996
Hon. Bob Miller
Governor
Capitol Complex
Carson City, NV 89710

Re: Appointment of Replacement Judges in Case No. 24598
Dear Governor Miller:
We are in receipt of your letter of January 12, 1996, regarding the referenced matter. Although we are extremely disappointed in the unprecedented denial of Chief Justice Steffen's request for substitute jurists in Case No. 24598, we respect the fact that the circumstances surrounding what should have been a routine request have been somewhat complicated, at least on the surface.
Governor, we are obviously not aware of the "considerable research" and advice that you received and acted upon from your in house legal counsel, but respectfully suggest that the research and advice overlooked some fundamental truths and principles that should be dispositive of the legal dilemma that you alluded to in your letter. As a result, the undersigned justices, as a majority of the elected justices qualified to sit on Case No. 24598, have determined to hereby seek your reconsideration of Chief Justice Steffen's earlier request in order to avoid further delay in the achievement of the court's responsibilities in finalizing that highly important case.
Preliminarily, and perhaps least significantly, the Order of December 28, 1995, signed by Justices Young, Rose and Shearing, and to which you make reference in your letter, has no legal validity since it violated the Order signed by all five justices dated December 23, 1994, which required all court rule changes to occur in a duly noticed public hearing. See attached Exhibit A.
Supreme Court Rule 11 states clearly, in pertinent part that: "(2) Whenever the chief justice determines that it will promote the effective administration of justice.... [i]f designated by the governor, at the request of the chief justice, a former district judge may be assigned, as a judge pro tempore, to hear specific cases in the supreme court upon disqualification of a justice thereof." (Emphasis added.)
Finally, on this point, under Art. 6,  4 of the Nevada Constitution, "[i]n case of the disability or disqualification, for any cause, of the chief justice or one of the associate justices of the supreme court, or any two of them, the governor is authorized and empowered to designate any district judge or judges to sit in the place or places of such disqualified or disabled justice or justices.. . ." (Emphasis added.)
*512 Governor, we suggest that it is of the utmost importance that you consider the fact that under no circumstances can the "Order" of December 28, 1995, provide any authority in the two disqualified justices to act in determining any aspect of the future of Case No. 24598 or who will sit on that panel. Indeed, in the very rule invoked by the three justices in their Order of December 28, 1995, it is absolutely clear that neither Justice Rose nor Justice Young can participate in the selection of substitute jurists in the referenced case. Rule 7(5) provides as follows:
In the event the Chief Justice or the Vice Chief Justice is either disqualified or wishes to recuse himself in regard to the decision of any litigated matter, he is also precluded from undertaking any administrative action with regard thereto. This preclusion includes, but is not limited to, the assignment or direction of court personnel to review files of the case in question and the selection of any substitute jurists to participate in the court's decision.

(Emphasis added.) When Justice Rose recused himself from Case No. 24598 on January 14, 1994, as a result of a motion to disqualify, he was then Chief Justice. Under Rule 7, he is clearly barred from acting in the selection of any substitute jurist on that case. Similarly, Justice Young, who recused himself from the inception of Case No. 24598, is the Vice-Chief Justice of the court and is also disempowered to participate in the selection of a substitute jurist under Rule 7. It is therefore clear that it would be impermissible for Rose and Young to participate in any recommendation to you concerning replacement jurists in Case No. 24598. Of the remaining three elected members of the Nevada Supreme Court, the undersigned two justices constitute a majority of the three, and again request that you appoint the two substitute jurists previously submitted for your action.
As early as 1886 this court recognized and held that when plaintiffs sought an extension of time within which to file amendments to a motion for a new trial from a judge who was disqualified to sit in the same case,
[t]he application to the judge, who was disqualified, might as well have been made to a stranger having no authority to act. If it had been granted, the order would have been absolutely null and void. Under these circumstances, the case must be treated as if no application had been made for any extension of time to file amendments.
Frevert v. Swift, 19 Nev. 363, 365, 11 Pac. 273, ___, (1886). In effect, the two disqualified justices, Young and Rose, combined with the lone dissenter in Case No. 24598, Justice Shearing, are attempting by the irregular order of December 28, 1995, to either control appointments to the court in Case No. 24598, or to render that court impotent by blocking the appointment of substitute judges in that case. This they may not do under any ethical or legal rule or principle.
Governor, we cannot possibly overstress the importance of the executive acting in order to allow the processes of the judicial branch to continue unimpeded by those who, notwithstanding their disqualification in Case No. 24598, have taken every conceivable measure to prevent the court in the referenced case from fulfilling its obligations. The remaining responsibilities of that constitutional tribunal have been settled in the court's decisions and are irrefutably the law of the case.
There are no lawful or constitutional methods for frustrating the duties of the court in Case No. 24598. If the judicial course of that court is to be derailed, it must be through the illegitimate use of raw power through a combination of forces within the judicial and executive branches of government. We sincerely hope and trust that you will not permit this to occur.
Eventually, all actions with respect to Case No. 24598 will be scrutinized by objective and impartial sources. We are fully prepared to justify the judicial fidelity and exactitude with which the court has acted in Case No. 24598. We trust that you will now assist us in ensuring that history will reflect that the entire unfortunate and tortured course of that case will be honorably brought to a close with the highest level of public illumination.
Thank you for your consideration.
*513
 Sincerely,
 /s/ Thomas L. Steffen
 THOMAS L. STEFFEN
 Chief Justice
 /s/ Charles E. Springer
 CHARLES E. SPRINGER
 Justice
Attachment

EXHIBIT F

THE STATE OF NEVADA

OFFICE OF THE GOVERNOR

555 E. Washington Avenue 
Suite 5000 
Las Vegas, Nevada 89101 
BOB MILLER

Governor

TELEPHONE

(702) 486-2500

FAX: (702) 486-2505

January 29, 1996
Justice Thomas Steffen
Justice Charles Springer
Nevada Supreme Court
Capitol Complex
Carson City, Nevada 89710
Dear Justices Steffen and Springer:
On December 20, 1995, Justice Steffen requested that I name replacements for Judges Guy and Zenoff to the so called "Whitehead Panel." As you are aware, I informed Justice Steffen that his request did not comport with the requirements specified in an Order of the Supreme Court filed December 28, 1995, as it was not signed by a majority of the elected members of the Court, and I was thus precluded form granting it.
I have and will continue to respond to orders of the majority of the elected members of the Supreme Court. If, in fact, you provide me with a request for appointment to the Whitehead panel signed by a majority of the elected members, I will comply. Until that time, I respectfully decline your request that I reconsider my decision.
 Sincerely,
 /s/ Bob Miller
 BOB MILLER
 Governor
BM/cmc

EXHIBIT G

IN THE SUPREME COURT OF THE STATE OF NEVADA

IN RE PETITION FOR A WRIT OF PROHIBITION OR IN THE ALTERNATIVE FOR A WRIT OF MANDAMUS,

No. 24598

July 30, 1993

CONFIDENTIAL ORDER
We have considered the petition on file herein, and respondent's emergency motion for a review of this court's order of July 22, 1993. Cause appearing, we grant the emergency motion insofar as it challenges that portion of our order of July 22, 1993, that requires respondent, on or before August 2, 1993, to "provide to petitioner a list of all persons outside the members of the Commission who have been contacted by any person purporting to act with the authority of the Commission and advised of the pendency of an `investigation' or `proceeding' against petitioner, and all other matters required to be disclosed pursuant to ARJD 14(5)...." Accordingly, we relieve respondent of the obligation to comply with this quoted portion of our order of July 22, 1993, pending further order of this court.
In all other respects, we deny respondent's motion, and we specifically reaffirm each and every remaining provision of our order of July 22, 1993. Specifically, all proceedings before and actions of the Commission relating to this matter, and the actions of those acting on behalf of the Commission, shall remain stayed, including the filing of any answer to any pleading, the holding of any hearing, and the conducting of any further investigation. Further, the Commission must advise each person notified of or requested to appear at a probable cause hearing that they should not do so pending further notice. The Commission and all persons *514 purporting to act pursuant to its authority shall maintain strict confidentiality concerning the proceedings below, and shall maintain the confidentiality of this proceeding before this court. All pleadings and documents submitted for filing in this case shall be filed under seal and shall contain the caption as set forth in this order. All documents shall be submitted for filing by delivering them personally to the clerk of this court, Janette Bloom, or the chief deputy clerk, Jeanne Richards.
Finally, respondent shall file an answer to this petition as required by our order of July 22, 1993.
It is so ORDERED.
 /s/ Rose
 ROSE
 Chief Justice
 /s/ Steffen
 STEFFEN
 Justice
 /s/ Springer
 SPRINGER
 Justice
cc: Hon. Frankie Sue Del Papa, Attorney General
Brooke Nielsen, Deputy Attorney General
Donald J. Campbell
Guy Shipler, Chairman, Nevada Commission on Judicial Discipline
Ohlson & Springgate
NOTES
[*] ___ Nev. ___, 920 P.2d 489.
[1] In the prohibition proceedings (Case No. 27847) that are the subject of this opinion, the disqualified justices and dissenting Justice Shearing did make a request of the governor that he appoint two district judges of their choosing, one of whom had been subpoenaed as a Commission witness against judge Whitehead. To their credit, both of the judges selected by the disqualified justices refused to accept commissions offered to them by the governor at the request of Justices Young, Rose and Shearing, and it became necessary for the three justices to sign the void prohibition order as an incomplete, three justice tribunal.
[2] We note that the writ which purports to overrule certain rulings of this case was filed by Justices Young and Rose under another case number, Case No. 27847. Although collateral in nature, the effect of the writ is clear, and that is to overrule aspects of the above-entitled case and to order that the members of the court "cease and desist" in all matters relating to this case. It is a case of Justices Young, Rose and Shearing issuing a writ of prohibition prohibiting the court itself from proceeding in this case. There is no legal or constitutional basis for such a writ. A writ of prohibition may be issued only by the supreme court against "inferior tribunals."
[3] NRS 2.140 provides:

Three justices shall constitute a quorum for the transaction of business, excepting such business as may be done at chambers, and the concurrence of three justices who heard the argument shall be necessary to pronounce any judgment, except in chamber business; and if three justices who have heard the argument do not agree, the case shall be reargued.
[4] In pertinent part, Art. 6,  4 provides that "[t]he [supreme] court shall also have power to issue writs of mandamus, certiorari, prohibition, quo warranto, and habeas corpus. . . ."
[5] Although the Whitehead court has issued a series of final opinions, throughout this opinion all such cases shall simply be referred to as "the Whitehead case, or "Case No. 24598." We note here, however, the cases previously filed by the Whitehead court: Whitehead v. Nevada Comm'n on Jud. Discipline, 110 Nev. 128, 906 P.2d 230 (1994) (Whitehead I); Whitehead v. Nevada Comm'n on Jud. Discipline, 110 Nev. 380, 873 P.2d 946 (1994) (Whitehead II); Whitehead v. Nevada Comm'n on Jud. Discipline, 110 Nev. 874, 878 P.2d 913 (1994) (Whitehead III); Whitehead v. Nevada Comm'n on Jud. Discipline, 111 Nev. 70, 893 P.2d 866 (1995) (Whitehead IV); Whitehead v. Nevada Comm'n on Jud. Discipline, 111 Nev. 1459, 908 P.2d 219 (1995) (Whitehead V).
[6] Hereafter Justices Young, Shearing, and Rose, who have issued the opinion filed on April 25, 1996 in Case No. 27847, unless the text demands otherwise, will simply be referred to as "the three justices."
[7] Judge Whitehead retired from the bench in January 1996 and is no longer a sitting judge.
[8] Justices Rose, Steffen and Springer, as evidenced by the three-justice order filed with the Clerk of the Court on July 30, 1993; and Justices Steffen, Springer, Sr. Justice Zenoff, and District Judge Guy as evidenced by their rulings in Whitehead I, Whitehead II, Whitehead III, Whitehead IV. Arguably, even the dissenting justice, Miriam Shearing, recognized the right of Petitioner to have his pre-probable cause writ petition in this court entertained in confidence. See Whitehead IV, 111 Nev. at 100 n. 8, 893 P.2d at 884 n. 8.
[9] See Whitehead IV, 111 Nev. at 100 n. 8, 893 P.2d at 884 n. 8.
[10] As noted previously, the three justices also attempted unsuccessfully, at public administrative conferences of the court held on September 15, 1995 and December 15, 1995 to rescind the appointment of the special master and to terminate the constitutional court in Case No. 24598. These maneuvers forced the Whitehead court to issue Whitehead V in order to declare the order by the three justices terminating the appointment of the special master, and their intention to terminate the Whitehead panel, illegal and void.
[11] It is strongly arguable that Justice Shearing, having actively joined with the two disqualified justices in the attempt to usurp the jurisdiction of the Whitehead court, is herself no longer qualified to sit on the Whitehead case. However, we need not decide that issue at this time.
[12] We note with some reluctance that the disqualification of Justices Rose and Young in Case No. 24598 was not in any degree tenuous. The fact that Justice Rose was at least arguably in a position of jeopardy with the attorney general and the Discipline Commission over a secret meeting with the Clark County District Attorney (a personal friend) in which he was secretly recorded by the police as telling the district attorney that he would "love" to see the criminal charges pending against two friends, one a business associate, "go away," is public knowledge. This episode was the basis for the motion resulting in Justice Rose's disqualification.

Justice Young appeared with the members of the Discipline Commission (he served on that Commission during the pertinent periods of time in the course of the Whitehead investigation and litigation) when they finally delivered relevant records in the Whitehead matter to the court for its in camera inspection. More importantly, he sat with Commission members during the public adversary hearing before the court. Finally, on April 19, 1995, well into the Whitehead case rulings, Justice Young petitioned the court on its administrative docket (ADKT 202) on behalf of the Commission for an amendment to the Commission's rules to still allow the imposition of discipline in secret, including the imposition of a fine of up to $5,000 and an agreement not to hold judicial office in the future, without any public filings, without any probable cause hearing, or means of determining whether the Commission was functioning responsibly in the imposition or lack of imposition of discipline. Needless to say, Justice Young's position was in direct conflict with the ruling of the Whitehead court that the Nevada Constitution and the Commission rules required the Commission to either dismiss a complaint against a judge after a preliminary investigation, or schedule a probable cause hearing which, upon a finding of probable cause, required the Commission to employ a special prosecutor to prepare a formal statement of charges to be filed as a public document.
[13] In pertinent part, art. 6,  19 provides:

1. The chief justice is the administrative head of the court system. Subject to such rules as the supreme court may adopt, the chief justice may:
. . . .
(c) Recall to active service any retired justice or judge of the court system who consents to such recall and who has not been removed or retired for cause or defeated for retention in office, and may assign him to appropriate temporary duty within the court system.
[14] SCR 10, in pertinent part, provides:

2. A senior justice or judge, with his consent, is eligible for temporary assignment to any state court at or below the level of the court in which he was serving at the time of his retirement.
. . . .
4. Each senior justice or judge assigned as provided in this rule has all the judicial powers and duties, while serving under the assignment, of a regularly elected and qualified justice or judge of the court to which he is assigned.
[15] Art. 6,  4 of the Nevada Constitution provides, in pertinent part:

In case of the disability or disqualification, for any cause, of the chief justice or one of the associate justices of the supreme court, or any two of them, the governor is authorized and empowered to designate any district judge or judges to sit in the place or places of such disqualified or disabled justice or justices....
[16] The incredibly bizarre nature of the purported "remedy" extruded from Case No. 27847 is compounded by the fact that Case No. 27847 truly does create a "house divided" equally against itself since Case No. 24598 includes a panel of three elected members of the Nevada Supreme Court (Justices Steffen, Springer and Shearing), the same as in Case No. 27847 (Justices Young, Rose and Shearing). One is startled by the form of "ping-pong" jurisprudence the three justices seek to introduce in Nevada by the simple expedient of having disqualified justices join with a dissenting justice in a contrived writ proceeding designed to permit the collusive overruling of a case and controversy in which the disqualified members were enjoined from participating. The question will always arise: Which Siamese twin (panel of the court) will have the last say in determining what rule of law is to be respected?

We emphasize, however, that when disqualified justices who are regularly "elected" members of this court, join in an effort to affect or overrule the case and controversy in which they are disqualified, their status as "elected justices" has no efficacy in the formation of an "elected majority" purporting to have jurisdictional capacity to act in the matter in which they are disqualified.
[17] "The writ [of prohibition] may be issued only by the supreme court to an inferior tribunal" or specified others who are "exercising judicial functions, when such proceedings are without or in excess of the jurisdiction of such tribunal...." NRS 34.330; NRS 34.320. In this historically bizarre proceeding, the three justices have sought to issue a writ of prohibition against the same court on which they are elected to sit. It will be seen from the text of this opinion concerning the composition and authority of the Whitehead court in Case No. 24598, that it is in no sense or effect an "inferior tribunal."

Moreover, it is clear that the reference to other entities who are "exercising judicial functions without or in excess" of their jurisdiction does not relate in any way to any constitutionally established court of record in Nevada. Indeed, a good example of the provision to which reference is made is to be found in the unauthorized, extra-jurisdictional activities of the Commission on Judicial Discipline as noted in great detail in the Whitehead opinions issued in Case No. 24598.
[18] Significantly, the special master and veteran investigator was so convinced by the quality of the evidence he had produced of major corruption directed at this court, that he indicated in a televised interview that he would be willing to continue the investigation on a pro bono basis.